**SPEED PRODUCTS CO., Inc. v. TINNERMAN PRODUCTS, Inc.**

No. 64, Docket 21373.

United States Court of Appeals
Second Circuit.

Argued Nov. 7, 1949.

Decided Dec. 14, 1949.

Bates, Teare & McBean, Cleveland, Ohio, Darby & Darby, New York City (Albert R. Teare, Cleveland, Ohio, of counsel), for defendant-appellant.

Charles M. Palmer, Washington, D. C., Harry Price, New York City, for plaintiff-appellant.

Before AUGUSTUS N. HAND, CHASE and CLARK, Circuit Judges.

CHASE, Circuit Judge.

#### The Plaintiff's Appeal.

This appeal is from the judgment which granted registration under Section 4915 of the Revised Statutes, as amended, 35 U.S. C.A. § 63, to the plaintiff's trade-mark despite the denial of the application filed on May 22, 1943 in the Patent Office, Serial

No. 460,846. The mark is composed of a design representing a sort of broad arrow having wings with lines simulating flight, with the word "Speed" prominently displayed on the arrow and taking up nearly all of the space which evidently is intended to represent the shaft. The application was for registration of the mark applied to "machine staples," not limited to use in any particular field or industry.

The defendant has three trade-marks all registered in class 13, hardware and plumbing and steam-fitting supplies, viz: "Speed Nut," Trade-Mark 244,038, under the 1920 Act,[1] (application filed April 5, 1928, Serial No. 264,395); "Speed Clip," Trade-Mark 347,986, under the 1905 Act[2] (application filed February 15, 1937, Serial No. 388,963), the word "clip" apart from the mark as shown being disclaimed; and "Speed Nuts," Trade-Mark 352,197, under the 1905 Act (application filed May 17, 1937, Serial No. 392,897), depicted in a design with "Speed" above and "Nuts" below a drawing of a bolt and speed nut having a streak of lightning shooting over the rest of the design diagonally from top to bottom, the representation of the goods and the word "Nuts" being disclaimed apart from the mark as shown in the drawing.

The denial of the application for registration of the plaintiff's mark in the Patent Office was put on the ground that its similarity to defendant's mark second above mentioned, "Speed Clip," was so close that confusion in the trade was reasonably likely. While it was recognized that the goods to which the parties applied the marks were by no means identical, it was pointed out that they did, "broadly speaking," possess the same descriptive qualities. Because it was found that the word "speed" dominated the plaintiff's mark, and it was obvious that the disclaimer of "clip" made the word "speed" predominate for registration purposes in the defendant's mark, the conclu-

sion above set forth was reached in the Patent Office almost as a matter of course.

The trial judge, on the contrary, found that the marks were used on goods so dissimilar in manner of distribution and in consumer use that no confusion was reasonably likely.[3] These differing views apparently have arisen because the trial judge centered his attention upon the fact that the plaintiff's fasteners were distributed largely through stationery stores and were used in offices and the like for fastening papers together while the defendant's fasteners were distributed largely through the hardware trade and were used to fasten together heavier material like metal. However, the application for the plaintiff's mark states that it is for "machine staples" without restriction as to the field of use and it is obvious that this broad term covers all kinds of machine staples and those which could be used on whatever material, not paper alone, that can be fastened together by staples. Nor is it of controlling significance that the defendant did not produce anyone who had ever been misled into buying plaintiff's products thinking they were defendant's or that neither defendant's president nor vice-president and general manager could recall a single instance in which anyone had ever been deceived, for here the similarity of the marks is such as to make confusion likely. George W. Luft Co. v. Zande Cosmetic Co., 2 Cir., 142 F. 2d 536, 538, certiorari denied, 323 U.S. 756, 65 S.Ct. 90, 89 L.Ed. 606; LaTouraine Coffee Co. v. Lorraine Coffee Co., 2 Cir., 157 F.2d 115, 117, certiorari denied, 329 U.S. 771, 67 S.Ct. 189, 91 L.Ed. 663. So we agree with the decision in the Patent Office that the mark applied for by the plaintiff and the above described mark of of the defendant are both for goods of the same descriptive qualities and are both so dominated by the word "speed" that it is reasonably to be foreseen that confusion in trade would be likely as the result of the

1. 15 U.S.C. § 121 † et seq.

2. 15 U.S.C. § 81 † et seq.
† Present provision § 1051.

3. This finding is, of course, not binding upon us. Best & Co. v. Miller, 2 Cir., 167 F.2d 374, 377, certiorari denied 335 U.S. 818, 69 S.Ct. 39. Indeed, the patent office findings are entitled to great weight. Safeway Stores v. Dunnell, 9 Cir., 172 F.2d 649, certiorari denied 337 U.S. 907, 69 S.Ct. 1049.

registration of the plaintiff's mark. It was, for this reason, not entitled to registration under either the 1905 or the 1920 Act even though the latter statute, as it was construed in Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195, does provide for the registration of descriptive marks.

### The Defendant's Appeal.

 The defendant alleged infringement of its three registered trade-marks previously mentioned. The two, "Speed Clip" and "Speed Nuts," Trade-Marks 347,-896 and 352,197, which were registered under the 1905 Act, are invalid because descriptive.[4] They are both dominated by the word "Speed," which describes one of the qualities of the clip and the nuts, and the defendant must show that the marks have acquired a secondary meaning in order to maintain any action. National Nu Grape Co. v. Guest, 10 Cir., 164 F.2d 874, certiorari denied 333 U.S. 874, 68 S.Ct. 903, 92 L.Ed. 1150. The other, "Speed Nut," registered under the 1920 Act is valid though it also is descriptive, but while that Act did provide for registration in the United States by both foreign and domestic applicants and one of its purposes was to enable domestic registrants to obtain registration in foreign countries, it added nothing to the domestic substantive rights of registrants and marks registered under it are subject to collateral attack. Kellogg Co. v. National Biscuit Co., 2 Cir., 71 F.2d 662, 666. That is to say, defendant must show that this last mark is one which is entitled to protection at common law, and a descriptive mark is not a good common-law trade-mark, Warner & Co. v. Eli Lilly & Co., 265 U.S. 526, 528, 44 S.Ct. 615, 68 L.Ed. 1161, though it is entitled to protection against unfair competition if a secondary meaning is proved. Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 335–336, 59 S.Ct. 191, 83 L.Ed. 195; Charles Broadway Rouss, Inc., v. Winchester Co., 2 Cir., 300 F. 706, 714–715, certiorari denied

266 U.S. 607, 45 S.Ct. 92, 69 L.Ed. 465. We have said, however, that "the test of trademark infringement differs little, if any, from the test of unfair competition," and have phrased the test of unfair competition as "whether the public is likely to be deceived." Best & Co. v. Miller, 2 Cir., 167 F.2d 374, 376, 377, certiorari denied 335 U. S. 818, 69 S.Ct. 39. See also National Nu Grape Co. v. Guest, supra. We have determined only that confusion between plaintiff's mark sought to be registered and defendant's mark "Speed Clip" is likely. We have not determined that confusion would be likely between defendant's marks as now used and plaintiff's mark as now used.

 The only question remaining is whether defendant's trade-marks had acquired a secondary meaning before plaintiff entered the field. It is true that we have held in a design-patent case that secondary meaning was not established even though the trial court had made no finding to that effect, where there was insufficient evidence to support a finding that the design was a mark of distinction identifying its source, that purchasers were moved to buy the article because of its source, or that the secondary meaning was established when the other party entered the field. Lucien Lelong, Inc., v. Lander Co., Inc., 2 Cir., 164 F.2d 395, 397. Here, however, the trial court found on adequate evidence that "Defendant has expended large sums of money for advertising its marks and by evidence has demonstrated that its trademarks identified its product and that the word Speed is noted as their predominant feature." While plaintiff established that one of its predecessors used the mark "Speed Fastener" with respect to stapling machine and fastening tools in 1926, considerably before the time to which defendant's evidence as to secondary meaning relates, it cannot be said that plaintiff's predecessor had thereby "entered the field," for stapling machines and fastening tools on the one hand, and the staples, clips, and fasteners themselves on the other hand,

---

4. It is to be noted that this conclusion in no way affects plaintiff's right to register its mark. Validity of an opposer's registered mark is not an issue in registration proceedings. Skelly Oil Co. v. Powerine Co., 86 F.2d 752, 753, 24 C.C.P.A., Patents, 790.

are entirely different, if sometimes allied, products. The mark using the word "speed" as to which plaintiff claims earliest use with respect to machine staples is the very mark which plaintiff here sought to be registered. The trial court found that "From and after August, 1936, Parrot Speed Fastener Corporation and Speed Products Company and plaintiff applied on the containers for many of its products, including at least sometimes its staples, the double winged arrow with the word Speed imposed thereon."

Defendant raises the technical objection that plaintiff is not entitled to claim the benefits of the use of any trade-mark by its earlier predecessor, Parrot Speed Fastener Corporation, on the ground that the latter was dissolved on August 29, 1939, about one week before the partnership, Speed Products Company, which was plaintiff's immediate predecessor was formed, and that there was no assignment in writing of the corporation's good will or trade-marks to the partnership. We think this point without merit. An assignment in writing under 15 U.S.C.† § 90 was not necessary to pass common-law rights to the trade-marks. Ph. Schneider Brewing Co. v. Century Distilling Co., 10 Cir., 107 F.2d 699. The trial court found that "On August 29, 1939, the Parrot Speed Fastener Corporation was dissolved by filing a certificate of dissolution with the Secretary of State. Its assets were liquidated and distributed between its stockholders Jack and Belle Linsky who thenceforth under the trade name Speed Products Company continued at the same premises in the same business as partners with the same employees and the same inventory. Speed Products Company thereafter produced the same products as had the corporation." The good will of the corporation, though unmentioned, passed with the transfer of the business. See Pfleghar Hardware Specialty Co. v. Blair, 2 Cir., 30 F.2d 614, 617. Despite the filing of a certificate of dissolution, the corporation continued for the purpose of winding up its affairs, including the disposition of its good will, part of which

was whatever right it had to the use of "speed" trade-marks to identify its goods. New York Stock Corporation Law, McK. Consol.Laws, c. 59, § 105(8).

We therefore accept the earliest date upon which the Parrot Speed Fastener Corporation began using the above mentioned mark in connection with its staples as the critical date, and, for defendant to prevail on its counterclaim, it must prove that confusion with plaintiff's mark as now used is likely, and that one or more of defendant's marks had previously acquired a secondary meaning. The trial court made no findings on these points and the case must be remanded.

Judgment reversed without costs to either party and cause remanded for further proceedings in accordance with this opinion.

† Present provision § 1060.