**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Solomon FRIED et al., Defendants,**

**Albert FRIED, Third-Party Witness-Appellant.**

**No. 168, Docket 31701.**

United States Court of Appeals Second Circuit.

Argued Nov. 13, 1967.

Decided Dec. 4, 1967.

H. Stuart Klopper, Jamaica, N. Y., for Albert Fried, third party witness-appellant.

Howard L. Stevens, Asst. U. S. Atty. (Joseph P. Hoey, U. S. Atty., Eastern District of New York), for plaintiff-appellee.

Before WATERMAN, FRIENDLY and SMITH, Circuit Judges.

FRIENDLY, Circuit Judge:

Seven years have passed since the United States recovered a judgment against Dr. Solomon Fried, a Brooklyn dentist, for unpaid income taxes and penalties on which a balance of $175,000, with interest, remains unpaid. The Government's sense of frustration has been augmented by the facts that Dr. Fried liquidated several brokerage accounts and received $269,000 in cash immediately upon the making of the assessment underlying the judgment, removed himself to Miami after having been served with a subpoena in supplementary proceedings, and apparently has avoided examination or punishment despite an order of contempt. Not unnaturally the Government has sought information from members of Fried's family in the Eastern District of New York who it thinks may be holding property belonging to or fraudulently transferred by the taxpayer. Among these is his son Albert Fried, the appellant here, who has been employed for many years as a retail furniture salesman and lives with his wife and three children.

The Government's first effort to examine Albert Fried, a subpoena served in May 1965 for an oral deposition, provoked a motion to quash on the ground, supported by a physician's report, that a history of psychoneurosis, resulting in rejection for military service during World War II, attendance at an out-patient clinic, and a nervous breakdown in 1958, would make any appearance as a witness detrimental to his health. Judge Dooling reserved decision on the motion but granted the Government leave forthwith to serve "an information subpoena, accompanied by a copy and original of written questions" pursuant to New York C.P.L.R. § 5224(a)–3, here applicable by virtue of F.R.Civ.P. 69(a). There followed a long interval during which the Government allegedly sent an agent to interview Fried and sought, in May 1966, an order compelling him to submit to a psychiatric examination, which Judge Rosling denied as an "extraordinary invasion of respondent's [Albert Fried's] right of privacy" and because of the Government's failure to utilize the written interrogatory procedure. In November 1966 the Government mailed Fried an information subpoena and questions. He retained a new attorney who advised that he was under no duty to comply. When this predictably resulted in a motion to punish for contempt, counsel offered to submit Fried for oral examination. Thereafter Fried consulted a psychiatrist of repute who had furnished him a report when the Government was seeking to compel a psychiatric examination, and returned to the counsel who had represented him at that time. This attorney appeared before Judge Dooling on February 21, 1967, two days before the date to which the contempt motion had been adjourned. The attorney offered to make Fried available for a psychiatric examination but withdrew the offer of the preceding counsel to submit him for oral deposition. Although the judge made no direction of any sort, Fried, accompaned by his lawyer, presented himself for oral examination in the office of the United States Attorney. After being sworn, he slumped and fell

to the floor, displaying symptoms of acute distress; thereafter he was hospitalized for 13 days in a private hospital under the psychiatrist's care. The judge thereupon extended Fried's time to answer the questionnaire to June 1 and denied the contempt motion without prejudice to renewal if the questions were not answered by that time.

Late in May 1967, Fried's counsel moved to vacate and quash the information subpoena. A supporting affidavit recited that at the lawyer's request Fried had appeared in his office in mid-April in order to prepare answers but had become so agitated that counsel recommended another visit to the psychiatrist. Fried made this, and saw the attorney and the psychiatrist again during May. The psychiatrist's last report, confirming earlier ones of May 1966 and February 1967, was that Fried was "incompetent to answer questions pertaining to his father because of the violent emotional upheaval which they precipitate in him" and that any further attempt to answer the questionnaire "would probably cause the same mental collapse as the one suffered by him on February 21, 1967, with a real possibility of permanence." An opposing affidavit of an Assistant United States Attorney recited, in addition to matters already here summarized, that Fried maintains a stock brokerage account,[1] has access to a safe deposit box in a Brooklyn bank rented by his father, and has attended annual meetings of a company in which he owns stock and has presented the complaints of dissident shareholders "in a reasoned and competent manner."

The effectiveness of this as rebuttal depended on the exact nature of Fried's alleged disturbance, on which unfortunately the psychiatrist's reports shed little light. One theory, perhaps hinted at in the reports, is that Fried's illness is causally related to an unconscious fear of or guilt concerning his father, and that this fear or guilt paralyzes him from any action, such as disclosing his father's assets, which would bring him in conflict with his father. If this were the case, evidence that appellant is capable of handling matters not connected with his father would be of little relevance, and the court would be squarely faced with the question whether it should attempt to coerce appellant to overcome his inhibition, with possibly serious consequences to his future mental equilibrium, or should resign itself to non-disclosure from appellant and perhaps non-collection of the judgment. Another theory not inconsistent with the psychiatrist's reports is that appellant's psychological difficulties are not the result of such a relationship with his father, but that whatever their cause, they place such a load on his personality structure that this might collapse under the additional stress from having to answer possibly embarrassing questions. If this were the theory, the prediction that even the answering of a questionnaire under oath would produce dire results would be effectively countered by evidence that Fried takes similar amounts of stress in his stride. Judge Dooling apparently assumed the psychiatrist was proceeding on the latter theory and gave greater weight to the evidence of Fried's regular involvement with financial matters than to the medical prediction. Accordingly he denied the motion to quash the information subpoena, except for extending the time for compliance to August 1. Fried, represented by still another attorney, appealed, and counsel stipulated for a further extension until 10 days after our decision.

The Government contends that under the clear mandate of Alexander v. United States, 201 U.S. 117, 26 S.Ct. 356, 50 L.Ed. 686 (1906), which we recently applied in United States v. Fabric Garment Co., Inc., Eve Abrams, Witness, 383 F.2d 984 (2 Cir. 1967), the order is unappealable and a right to review will arise only should Fried persist in his re-

---

[1]. The record contains testimony by an employee of the brokerage firm, cited in Judge Dooling's memorandum, that Albert Fried "was up in the office a couple of times a week," "trades for himself," and "is an expert" on stocks.

fusal to answer and the requisite finality be furnished by an order punishing him for contempt. Fried counters with the familiar "collateral order" doctrine of Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 545–547, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), and contends that an order risking the subjection of an individual to bodily harm must be "final" in the very nature of things.

■ The Cohen case itself is rather easily distinguishable as involving a "collateral" question of law, as to the applicability in federal court of a state statute requiring the posting of security in derivative actions, which, once authoritatively determined, would hardly arise again; the Court made clear that its decision should not be taken to rule controversies over the amount of security, 337 U.S. at 547, 69 S.Ct. at 1226. Although this distinction would not cover Swift & Co., Packers v. Compania Columbiana Del Caribe, S. A., 339 U.S. 684, 688–689, 70 S.Ct. 861, 865, 94 L.Ed. 1206 (1950), on which Fried relies, that decision rested on the basis that "Appellate review of the order dissolving the attachment [of a ship] at a later date would be an empty rite after the vessel had been released and the restoration of the attachment only theoretically possible," and the Court distinguished the case where an attachment was upheld. The decisions sustaining the appealability of orders refusing to reduce bail, Stack v. Boyle, 342 U.S. 1, 6, 72 S.Ct. 1, 96 L.Ed. 3 (1951), and denying leave to proceed in forma pauperis, Roberts v. United States District Court, 339 U.S. 844, 70 S.Ct. 954, 94 L.Ed. 1326 (1950), are similarly explicable; in the former case a subsequent review would be wholly ineffective and in the latter there could be none. Despite these decisions and other more recent inroads on the finality doc-

trine, see Mercantile Nat'l Bank v. Langdeau, 371 U.S. 555, 83 S.Ct. 520, 9 L.Ed. 2d 523 (1963); Local No. 438, etc. v. Curry, 371 U.S. 542, 83 S.Ct. 531, 9 L.Ed. 2d 514 (1963); Gillespie v. United States Steel Corp., 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964), we know of no instance in which the Supreme Court has reflected on the holding in Alexander that a judge's order directing a witness to answer a question in the very action pending lacks the finality required to support an appeal by the witness until he decides to risk citation for contempt and a contempt order is made.[2] While in Covey Oil Co. v. Continental Oil Co., 340 F.2d 993, 996–997 (10 Cir.), cert. denied, 380 U.S. 964, 85 S.Ct. 1110, 14 L.Ed.2d 155 (1965), the court said it was "not impressed" with the argument that a mere witness "may obtain review by disobedience of the order and appeal from a subsequent order of contempt," this appears to be the very argument with which the Supreme Court was sufficiently impressed in Alexander to dismiss the appeal. So far as we can see, it has remained so. Cf. Cobbledick v. United States, 309 U.S. 323, 326–330, 60 S.Ct. 540, 84 L.Ed. 783 (1940); DiBella v. United States, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962). The other cases cited by appellant involve orders which terminated independent judicial proceedings, e. g., directing the taking of depositions for use in an action to be thereafter commenced, Mosseller v. United States, 158 F.2d 380 (2 Cir. 1946), quashing a subpoena duces tecum for information to be used in a proceeding in another court, Horizons Titanium Corp. v. Norton Co., 290 F.2d 421 (1 Cir. 1961), or quashing or enforcing subpoenas issued by executive or administrative agencies. See our recent discussion of these distinctions in In re Letters Rogatory Issued by Director of Inspection of Gov-

---

2. Appellant's doubt as to the reviewability of such an order as to him, under Fox v. Capital Co., 299 U.S. 105, 57 S.Ct. 57, 81 L.Ed. 67 (1936), is unfounded. That decision simply reaffirmed the rule "that except in connection with an appeal from a final judgment or decree, a party to a suit may not review upon appeal an order fining or imprisoning him for the commission of a civil contempt," and the distinction from Alexander was expressly noted. 299 U.S. at 107–108, 57 S.Ct. at 58.

ernment of India, 385 F.2d 1017 (1967), and the cases there cited, and 4 Moore, Federal Practice ¶ 26.37 [1.1. and .2] and 6 id. ¶ 54.16.

■ The argument that the order must be regarded as final because of its possibly serious consequences to appellant's well-being does not withstand analysis despite its superficial attractiveness. While Fried's highly particularized syndrome may indeed be unlikely to recur, acceptance of his position would open the door to countless appeals from orders heretofore uniformly deemed interlocutory, thereby swelling appellate dockets already too large and delaying trial calendars already too slow. In addition to orders compelling testimony before, during or after trial by witnesses who claim serious physical or mental ailments, the principle would embrace orders directing physical or mental examinations under F.R.Civ.P. 35(a) of persons who contend, as Fried earlier did, that such examinations would injure their health, and directing that a criminal or civil case proceed to trial despite alleged inability of a party to participate, compare United States v. Knohl, 379 F.2d 427 (2 Cir. 1967). Under the *Covey Oil* decision, claims of serious pecuniary damage from discovery orders would also qualify. With the number of appeals having increased almost 70% in the last five years, see Report of the Proceedings of the Judicial Conference of the United States, March 30–31, 1967, p. 8, as against the much smaller growth in district court litigation, this is no time to weaken the historic rule putting a witness' sincerity to the test of having to risk a contempt citation as a condition to appeal, however harsh its application may seem to the appellant here. If Fried is not exaggerating, as the district judge thought he was, he will continue his refusal and a more meaningful review can be had on the fuller record that will become available in a contempt proceeding.

While we therefore must dismiss the appeal, we think it not amiss to note, without thereby intimating any direction, that the belated offer to submit Fried to examination by a psychiatrist designated by the Government, made at the beginning of the February 21, 1967 hearing, seems somehow to have disappeared from view.

Appeal dismissed for want of appellate jurisdiction.