**Meredith D. SHATTUCK and Ulo Vahtra (IBM), Movants-Appellees,**

**v.**

**Helmut HOEGL and Giacomo Barchietto (Xerox), Respondents-Appellants.**

**No. 222, Docket 74-1767.**

United States Court of Appeals, Second Circuit.

Argued Nov. 25, 1974.

Decided July 16, 1975.

Francis J. Hone, New York City (Brumbaugh, Graves, Donohue & Raymond, New York City, on the brief), for respondents-appellants.

Joseph G. Walsh, San Jose, Cal. (Clyde C. Metzger, Robert J. Kadel, Sidney R. Bresnick, and Pennie & Edmonds, New York City, on the brief), for movants-appellees.

Before CLARK, Associate Justice,* and MOORE and TIMBERS, Circuit Judges.

TIMBERS, Circuit Judge:

On this appeal from an order entered May 7, 1974 in the Western District of New York, Harold P. Burke, *District Judge*, pursuant to 35 U.S.C. § 24 (1970),[1] directing a deposition witness, Dr. John W. Weigl, to produce certain documents and to testify with respect thereto in connection with a Patent Office interference proceeding, we find decisive the threshold question whether the order is appealable as a final decision within the meaning of 28 U.S.C. § 1291 (1970).[2]

We hold that the order is not appealable and therefore we dismiss the appeal for lack of appellate jurisdiction.

---

* Associate Justice Tom C. Clark, United States Supreme Court, Retired, sitting by designation.

1. 35 U.S.C. § 24 (1970) in relevant part provides:

"The clerk of any United States court for the district wherein testimony is to be taken for use in any contested case in the Patent Office, shall, upon the application of any party thereto, issue a subpoena for any witness residing or being within such district, commanding him to appear and testify before an officer in such district authorized to take depositions and affidavits, at the time and place stated in the subpoena. The provisions of the Federal Rules of Civil Procedure relating to the attendance of witnesses and to the production of documents and things shall apply to contested cases in the Patent Office.

\* \* \*

A judge of a court whose clerk issued a subpoena may enforce obedience to the process or punish disobedience as in other like cases, on proof that a witness, served with such a subpoena, neglected or refused to appear or to testify . . . ."

2. 28 U.S.C. § 1291 (1970) in relevant part provides:

"The courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . ."

### I.

The instant discovery proceedings in the district court are ancillary to a patent interference proceeding (Interference No. 98,047),[3] which presently is pending in the United States Patent Office between Meredith D. Shattuck and Ulo Vahtra (Shattuck) and Helmut Hoegl and Giacomo Barchietto (Hoegl).

The real parties in interest are International Business Machines Corporation (IBM), assignee of Shattuck U. S. Patent No. 3,484,237, and Xerox Corporation (Xerox), assignee of Hoegl application Serial No. 108,548, filed January 29, 1971. The latter is a continuation-in-part of Hoegl application Serial No. 519,081, filed January 6, 1966. In this opinion, we shall refer to the real parties in interest: IBM (Shattuck) and Xerox (Hoegl).

The patent interference involves IBM's production of copier machines which began in April 1970. In January 1966, Hoegl filed a parent patent application relating in part to a photoconductive composition involved in the copying process. In December 1969, the disputed Shattuck patent also relating to this composition issued to IBM. In January 1971, after learning of the issuance of the Shattuck patent, Xerox filed a continuation-in-part (CIP) application which was accompanied by a declaration of inventorship in which Hoegl and Barchiet-

to claimed to be the first inventors. After institution by the Patent Office on August 16, 1972 of patent interference No. 98,047 between the Shattuck patent and the Hoegl CIP application, Hoegl and Barchietto in November 1972 swore in their preliminary statement in this interference proceeding that they were the first inventors.

IBM initially sought discovery in the Patent Office on various issues relating to the interference, including the possibility of fraud on the Patent Office in connection with Xerox's CIP application and its preliminary statement. The gravamen of IBM's charge was that Xerox attorneys were aware of relevant prior art work by members (Mammino and Salasny) of a technical group directed by Dr. John W. Weigl, an employee of Xerox, when the Xerox attorneys caused Hoegl and Barchietto to make (1) the declaration of inventorship in the CIP application in which they declared that they believed themselves to be the "original, first and joint inventors" of the subject matter thereof, and (2) the preliminary statement in the interference in which they swore that they were the inventors of the subject matter of the interference. If Xerox's attorneys had improperly withheld from the Patent Office evidence of the Weigl group's work, this could constitute fraud and could provide grounds for striking Xerox's preliminary statement. Priority of invention in that event would be awarded to IBM.

---

**3.** An interference proceeding has been described as follows:

"A patent interference is a statutory administrative proceeding, authorized by 35 U.S.C. § 135, to determine which of two or more applicants is the first inventor and, therefore, entitled to a patent. The Board of Patent Interference assumes jurisdiction after the interference is declared by the Patent Examiner. The earliest applicant is awarded the status of senior party and is granted a prima facie date of invention as of the date of his application. All other parties are junior and have the burden of proving a date of actual invention earlier than that of the senior party. After each party files a preliminary statement in which he sets forth the earliest date of invention he intends to claim, the parties are granted a period of

time to file motions to clarify or reform the interference prior to trial. The motions are heard by the Patent Examiner who originally declared the interference. The preliminary statements are then exchanged, and the matter returned to the Board of Patent Interferences for trial. The Board then establishes a time schedule within which the parties must present their cases. All evidence must conform to the Patent Office rules. Under those rules, testimony is presented by deposition on oral examination, by affidavit or stipulation. Presentation times are assigned to the various parties based upon the inverse order of filing dates." *In re Natta,* 388 F.2d 215, 216 (3 Cir. 1968), *overruled on other grounds, Frilette v. Kimberlin,* 508 F.2d 205 (3 Cir. 1974) (en banc), *cert. denied,* 421 U.S. 980 (1975).

Xerox's position is that the work of the Weigl group was abandoned and therefore did not constitute prior art under 35 U.S.C. § 102(g) (1970), there being no duty to disclose to the Patent Office abandoned work which is not prior art.

IBM's motion for discovery under Patent Office Rule 287(c)[4] was essentially denied on December 20, 1973 by the Board of Patent Interferences. In so ruling, the Board stated:

"Turning to the question of possible fraud by Hoegl et al., we do not consider that the showing by Shattuck et al. in support of their motion establishes that the interest of justice requires the ordering of the additional discovery requested. Where, as here, a broad allegation of fraud has been leveled by one of the parties no order for broad discovery will be issued merely to investigate the possibility of the existence of fraud . . . ."

The Board considered the possibility of fraud in the CIP application to be irrelevant to the question of priority of invention at issue in the interference. It did grant discovery to IBM, however, on the question of fraud in the preliminary statement but only to the extent that Xerox did not oppose answering three interrogatories. The Board then added somewhat cryptically:

"It should be further noted in connection with the Shattuck et al. request for the production of witnesses that this Board has no authority to order or force a person to testify on an interference proceeding. Shattuck et al. can, however, call the persons involved as their own witnesses which apparently is what they intend to do."

On February 11, 1974, by a subpoena duces tecum issued pursuant to 35 U.S.C. § 24, IBM sought to obtain certain documents from Dr. Weigl (among others) relating to work done before August 1, 1964 which involved the subject matter of the interference and to take his testimony with respect thereto. Dr. Weigl appeared for his deposition. On the advice of the Xerox attorneys, however, he refused to answer any questions of substance propounded by IBM or to produce the subpoenaed documents.

IBM then moved in the district court for an order to compel Dr. Weigl to produce the documents and to testify about them. Xerox opposed the motion on the ground that the district court was without authority to order the relief sought in view of the Patent Office's denial of discovery and on the further ground that the documents sought were not relevant to the interference because any work done by the Weigl group was unrelated to the issue of priority as between Shattuck and Hoegl.

On March 26, 1974, after oral argument and submission of written memoranda, the district court granted IBM's motion. It held that the subpoenaed documents and testimony had a direct bearing on the allegations of fraudulent misconduct on Xerox's part in filing the preliminary statement. The court held that the discovery sought was relevant to the interference because alleged fraud was ancillary to priority of invention and, if established, would provide a basis for striking the preliminary statement. Viewing its order as complementing "patent office jurisdiction in search for the truth", the court stated:

"The movants are entitled to unrestricted access to sources of information bearing on the question of fraud. Weigl is not a party to the interference proceeding. He has no standing to refuse to answer questions asked at

4. Patent Office Rule 287(c), 37 C.F.R. § 1.287(c) (1974), provides:

"Upon a motion [Rule 243] brought by a party during the period for preparation for testimony, or thereafter as authorized under [Rule 245], and upon a showing that the interest of justice so requires, the Board of Patent Interferences may order additional discovery as to matters under the control of a party within the scope of the discovery rules of the Federal Rules of Civil Procedure, specifying the terms and conditions of such additional discovery. An order by the Board granting or denying a motion under this paragraph shall not be subject to review prior to a decision awarding priority."

the deposition on the ground that they are irrelevant to the interference proceeding."

Xerox did not appeal from this order. The deposition of Weigl was resumed on April 5, 1974. On the advice of the Xerox attorneys, however, Weigl continued to withhold three documents within the scope of the subpoena, claiming that they were attorney-client privileged communications or the work-product of attorneys.

IBM moved in the district court to compel compliance with the court's order of March 26. On May 7, after further oral argument and submission of additional written memoranda, the court overruled Xerox's claim of attorney-client privilege, and directed Weigl to produce the three documents and to answer all questions about them. After quoting from its previous order, the court stated:

"It is essential that Shattuck, et al., have access to the documents to be able to present the facts to the Patent Office regarding the issue of fraud."

Xerox took the instant appeal from the order entered May 7, 1974.

## II.

In ordering disclosure pursuant to Rules 30 and 37, Fed.R.Civ.P., the district court exercised its jurisdiction under 35 U.S.C. § 24 which gives ancillary jurisdiction to the district courts to compel attendance of witnesses and production of documents in patent interference proceedings. *Babcock & Wilcox Co. v. Combustion Engineering, Inc.,* 314 F.Supp. 235, 237 (D.Conn.), *aff'd on district court's opinion,* 430 F.2d 1177 (2 Cir. 1968).

■ Before we may reach the merits of the district court's order, however, we first must determine the threshold question whether we have appellate jurisdiction to review it. Xerox has taken the instant appeal pursuant to 28 U.S.C. § 1291 (1970), asserting that the district court's order is a final decision within the meaning of § 1291.[5] We disagree.

■ It is axiomatic that consideration of the finality of disclosure orders of a district court involves a balancing process. On the one hand, there is the deeply rooted federal policy against piecemeal review and the obstruction of an ongoing judicial proceeding through such review. If the person against whom such an order is directed insists upon interlocutory review, he may be required to risk a contempt citation and subsequent review of the comtempt order rather than to be permitted to appeal the disclosure order itself. See *United States v. Fried,* 386 F.2d 691, 695 (2 Cir. 1967). On the other hand, interlocutory review of a disclosure order may be proper where denial of such review would effectively preclude any review at all of an individual's claim. See *United States v. Nixon,* 418 U.S. 683, 690–92 (1974). Courts also have considered whether the order is too important to be denied review. Cf. *United States v. Nixon, supra; International Business Machines Corp. v. United States,* 471 F.2d 507, 513 (2 Cir. 1972), *overruled en banc,* 480 F.2d 293 (2 Cir. 1973), *cert. denied,* 416 U.S 980 (1974).

Orders which have compelled testimony or production of documents generally have been held to be non-final and therefore not appealable. *Alexander v. United States,* 201 U.S. 117 (1906); *Baker v. United States Steel Corp.,* 492 F.2d 1074, 1077–78 (2 Cir. 1974).[6] The rule of non-appealability, however, has been relaxed where the only pending judicial

---

5. No application has been made to the district court or to our Court for certification under 28 U.S.C. § 1292(b) (1970); nor has a petition for a writ of mandamus been filed pursuant to 28 U.S.C. § 1651 (1970). We do not intimate any views as to the propriety of either procedure n this or similar cases.

6. It has been suggested that review might be proper where there has been a manifest abuse of discretion. *Atlantic City Elec. Co. v. A. B. Chance Co.,* 313 F.2d 431, 434 (2 Cir. 1963) (per curiam), *stay denied,* 83 S.Ct. 964, 10 L.Ed.2d 122 (Harlan, Circuit Justice, 1963); *Baker v. United States Steel Corp., supra,* 492 F.2d at 1081 (Lumbard, J., dissenting).

proceeding is the application for disclosure. See *Baker v. United States Steel Corp., supra,* 492 F.2d at 1077; 8 Wright & Miller, Federal Practice & Procedure § 2006, at 29 (1970) (hereinafter Wright & Miller); 4 Moore's Federal Practice ¶ 26.83[4] (2d ed. 1974) (hereinafter Moore). In the instant case, the motion pursuant to 35 U.S.C. § 24 in the district court is the only proceeding in that court although the interference is still pending in the Patent Office.

Professors Wright and Miller state flatly:

"[A]n order of a district court allowing or denying discovery in [a] proceeding ancillary to a patent interference case in the Patent Office is appealable as a final judgment." 8 Wright & Miller § 2006, at 3 (Supp.1974) (footnote omitted).

Professor Moore, however, indicates that the rule is "far from clear". 4 Moore ¶ 26.83[4], at 26–591 n. 7. We agree with Professor Moore's observation.

█ Although early cases held such orders to be non-appealable, more recent cases expressly have held them to be appealable or have reviewed the orders without discussing appealability. 9 Moore ¶ 110.13[2], at 158 & nn. 27–28. For example, our Court dismissed an appeal from an order pursuant to the statutory predecessor to 35 U.S.C. § 24,[7] holding the order to be non-final. *Tucker v. Peiler,* 297 F. 570 (2 Cir.), *cert. denied,* 265 U.S. 587 (1924). Accord, *Thomas French & Sons v. International Braid Co.,* 146 F.2d 735 (1 Cir. 1945). More recently, our Court affirmed a sim-

ilar district court disclosure order without considering the question of appealability. *Babcock & Wilcox Co. v. Combustion Engineering, Inc., supra.*[8]

We are mindful that recent decisions of other circuits have permitted appeals from orders entered pursuant to 35 U.S.C. § 24. A brief analysis of their *ratio decidendi* may be appropriate since, on the facts of the instant case, we adhere to our decision in *Tucker v. Peiler.*

As Professor Moore has pointed out, the rationale of the cases allowing appeals from disclosure orders in proceedings ancillary to patent interferences is difficult to discern. 4 Moore ¶ 26.83[4] n. 6. For example, in *Natta v. Zletz,* 379 F.2d 615 (7 Cir. 1967), the Seventh Circuit held appealable a district court's refusal to order document production by a party to an interference proceeding on the ground that the Patent Office could not order document production much less review the district court's order and therefore the district court's order was final. The Court of Appeals likened the case to one where testimony and document production by a non-party in one jurisdiction for use in another jurisdiction was denied. There was precedent in that circuit for allowing review in such cases. *Carter Products Co. v. Eversharp, Inc.,* 360 F.2d 868 (7 Cir. 1966).[9]

█ In allowing review in *Natta,* we think that the Seventh Circuit failed to distinguish between the situation of a party, as distinguished from that of a non-party. Such distinction strikes us as crucial. In the *Carter Products* situation, the court to which the appeal in the

---

**7.** Revised Statutes § 4906, derived from Act of July 8, 1870, ch. 230, § 45, 16 Stat. 204, as amended by Act of February 18, 1922, ch. 58, § 7, 42 Stat. 389, 391–92.

**8.** Our *Babcock & Wilcox* decision, not being an *en banc* decision, may not be viewed as having overruled our earlier decision in *Tucker.* Cf. *United States v. Mount,* 438 F.2d 1072, 1074 (9 Cir. 1970) (on petition for rehearing). Moreover, the precedential value of a per curiam exercise of jurisdiction noting an affirmance in open court is at best doubtful where the issue of jurisdiction apparently was not

raised but passed *sub silentio. Hagans v. Lavine,* 415 U.S. 528, 533 n. 5, 534–35 (1974); *United States v. More,* 7 U.S. (3 Cranch) 159, 172 (1805) (Marshall, *Ch. J.*); *United States v. American Society of Composers, Authors and Publishers,* 317 F.2d 90, 93 (2 Cir.), *rev'd on other grounds sub nom. Shenandoah Valley Broadcasting, Inc. v. American Society of Composers, Authors and Publishers,* 375 U.S. 39 (1963) (per curiam).

**9.** Accord, *Republic Gear Co. v. Borg-Warner Corp.,* 381 F.2d 551 (2 Cir. 1967).

main action would be taken would have no power to direct production by a nonparty outside its jurisdiction; hence no review of such a disclosure order would be possible unless in the ancillary jurisdiction. *Carter Products Co. v. Eversharp, Inc., supra,* 360 F.2d at 871–72; *Baker v. United States Steel Corp., supra,* 492 F.2d at 1078. On the other hand, where disclosure is sought from a party, the court which reviews the main action will always have the requisite jurisdiction to order disclosure. *Republic Gear Co. v. Borg-Warner Corp., supra,* 381 F.2d at 554. Similarly, a court which reviews a Patent Office determination may order production by a party to the interference if it thinks such production is warranted.

This latter view, however, was rejected by the Sixth Circuit in *Ochsner v. Mills,* 382 F.2d 618 (6 Cir. 1967). That was an appeal from a district court's refusal to order discovery under 35 U.S.C. § 24. The Sixth Circuit referred to the possibility of review of a Patent Office determination as a "legal fiction" because in a review by the Court of Customs and Patent Appeals, pursuant to 35 U.S.C. § 141 (1970), no additional evidence can be taken. Moreover, according to the Sixth Circuit, in a civil action in the district court pursuant to 35 U.S.C. § 146 (1970), the advantage of taking additional testimony would be counterbalanced by the presumption of administrative correctness. 382 F.2d at 622–23.

■ We are not persuaded by this rationale. Granted that great weight ordinarily is accorded to findings of the Patent Office, see *Speed Products Co. v. Tinnerman Products, Inc.,* 179 F.2d 778, 780 n. 3 (2 Cir. 1949), that would hardly be required where the Patent Office had ignored an issue or evidence on an issue (in the instant case, fraud) which would vitiate its finding as to priority. It is inconceivable that a district court reviewing a Patent Office determination would not order further disclosure on such an issue if it found that the original denial of disclosure, either by the Patent Office or by a district court in an ancillary proceeding under 35 U.S.C. § 24, had prejudiced substantial rights of the other party.

The Tenth Circuit's decision in *Natta v. Hogan,* 392 F.2d 686 (10 Cir. 1968), strikes us as perhaps the best rationale in favor of an immediate appeal. There, the district court had granted limited discovery. Both sides appealed. The court raised the issue of appealability *sua sponte.* Relying on *Cobbledick v. United States,* 309 U.S. 323 (1940), the Tenth Circuit held the order to be appealable.

In *Cobbledick,* the Supreme Court held that a court of appeals had no jurisdiction to review the denial of a motion to quash subpoenas duces tecum directing the petitioners to appear before a grand jury. The Court distinguished prior cases which had held appealable orders of the district court which compelled testimony from persons who had refused to testify in an ICC investigation. See *Ellis v. ICC,* 237 U.S. 434 (1915); *Harriman v. ICC,* 211 U.S. 407 (1908); *ICC v. Brimson,* 154 U.S. 447 (1894). The Court reasoned that in those cases the proceedings against the witnesses in the district court had been concluded. Thus, there were no considerations of avoiding piecemeal review which would delay the judicial process:

"[T]here is not, as in the case of a grand jury or trial, any further judicial inquiry which would be halted were the offending witness permitted to appeal. The proceeding before the district court is not ancillary to any judicial proceeding. So far as the court is concerned, it is complete in itself." 309 U.S. at 330.

In *Natta v. Hogan,* the Tenth Circuit reasoned that the rationale of *Cobbledick* was applicable since the appeal would not interfere with any pending judicial proceedings. All proceedings in the district court had terminated.

"In the circumstances presented a party should not be required to risk the hazard of punishment in order to ob-

tain a determination of its rights." 392 F.2d at 689 (footnote omitted).

Other circuits have held orders pursuant to 35 U.S.C. § 24 to be appealable with little or no discussion. See *Sheehan v. Doyle,* 513 F.2d 895 (1 Cir. 1975) (order requiring production of documents); *In re Natta,* 410 F.2d '187, 189 n. 2 (3 Cir.), *cert. denied,* 396 U.S. 836 (1969) (order denying production of documents); *Gladrow v. Weisz,* 354 F.2d 464 (5 Cir. 1965) (order requiring production of documents).

None of these cases convinces us that we should decline to follow our decision in *Tucker v. Peiler,* especially where, as here, production of documents and testimony of witnesses has been ordered. We thus. distinguish the instant case from one where a district court has *denied* production of documents or taking of testimony. In that situation, the district court order may very well be final since, as the Sixth Circuit pointed out in *Oschner,* no other court may ever be in a position to order production. See *Baker v. United States Steel Corp., supra,* 492 F.2d at 1078.

In the instant case, however, disclosure was *ordered.* When such documents and testimony ultimately are presented to the Board of Patent Interferences, Xerox will have ample opportunity under Patent Office Rule 286, 37 C.F.R. § 1.286 (1974), to object on evidentiary grounds to their admissibility in those proceedings. Moreover, on review by the Court of Customs and Patent Appeals or by a district court followed by appeal to the federal appellate courts, Xerox will be able to obtain review of any such decision of the Board.

In *Republic Gear Co. v. Borg-Warner Corp., supra,* we recognized the distinction, for appealability purposes, between orders which granted disclosure and those which denied it. There, after noting the necessity for allowing review of orders which denied disclosure by non-

parties outside the jurisdiction of the main proceeding, we stated:

> "[W]here disclosure is ordered and the order is not complied with, appellate review in subsequent contempt proceedings, however risky—is available to one ordered to disclose who refuses to do so. See *Cobbledick v. United States,* 309 U.S. at 327 . . . ." 381 F.2d at 554.

If this rationale applies to an ordinary witness, it should apply with even more force to a witness such as Weigl. Although nominally a non-party to the patent interference, he is an employee of Xerox, one of the real parties in interest. His refusal to testify or produce the documents sought was pursuant to instructions from the Xerox attorneys.

 We do not consider this to be an appropriate. case for invoking the "collateral order" doctrine of *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 545–47 (1949), to render the district court order final and appealable. The disclosure order is neither "too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated", nor "too important to be denied review".[10] *Id.* at 546. Review will be available and can await either the final judgment of the Patent Office or a contempt adjudication upon Weigl's continued refusal to disclose. *United States v. Fried, supra,* 386 F.2d at 694–95; *American Express Warehousing, Ltd. v. Transamerica Insurance Co.,* 380 F.2d 277, 280–82 (2 Cir. 1967).

While the contempt procedure sanctioned by the Supreme Court in *Cobbledick* and by our Court in *Borg-Warner* has been characterized as "old-fashioned and semi-barbaric", *International Business Machines Corp. v. United States, supra,* 471 F.2d at 511, we have adhered to it in an effort to limit piecemeal review through interlocutory appeals. Cf. *United States v. Fried, supra,* 386 F.2d

---

**10.** The assertion of claims of attorney work-product and attorney-client privilege does not require relaxation of the final judgment rule. *American Express Warehousing Ltd. v. Trans-* *america Insurance Co.,* 380 F.2d 277, 280–82 (2 Cir. 1967); cf. *Republic Gear Co. v. Borg-Warner Corp., supra.*

at 695. Moreover, here Xerox has an alternative route of appeal—through court review of the Patent Office determination. Compare *Cobbledick v. United States, supra,* 309 U.S. at 328–29. We decline to add a third route of review.

Appeal dismissed for lack of appellate jurisdiction.

MOORE, Circuit Judge (concurring):

Although I would not disturb Judge Burke's order on appeal, my reasons differ somewhat from those expressed by the majority.[1]

Two professors, learned in the field of federal procedure, have written that "An order of a district court allowing or denying discovery in [a] proceeding ancillary to a patent interference case in the Patent Office is appealable as a final judgment." 8 Wright & Miller, Federal Practice & Procedure § 2006, at 3 (Supp. 1974).

This is a patent interference case in the Patent Office and this proceeding in the United States District Court for the Western District of New York is ancillary thereto. The conditions mentioned have been met. The authors declare that it makes no difference whether the order grants or denies discovery. At first blush there might be some basis for a distinction but upon analysis the blush quickly fades. Denial forecloses the party seeking production from placing before the Patent Office or a court such evidence of fraud as the documents might disclose; granting will reveal that which it is contended should be concealed. In choosing between these alternatives it is probably better to lean towards disclosure. If the documents disclose fraud the truth should be revealed; if no fraud is disclosed, Xerox should not be harmed. If the nature of the documents is so confidential that Xerox feels that they should not be disclosed, the merits of this question, not presently before us, can be tested in future proceedings. What effect, if any, the Board will give to whatever may be in the documents is for their determination. If fraud be irrelevant to a decision as to priority of invention, this issue is for the Patent Office—not for us. Therefore, on balance, despite my dislike for the "old-fashioned and semi-barbaric" contempt procedure, I view that procedure as the best present means of disclosing the truth and protecting each of the parties. Evolutionary process in certain procedural phases of the law is slow. Possibly our lawmakers or even the courts will find a better solution eventually.

The documents in question, apparently not having been produced even for *in camera* inspection by the trial judge, were not made the subject of any ruling as to the confidential content thereof. They are not before us on appeal. Therefore it remains for some other court on some other occasion to pass upon this issue. It is enough at this juncture and on these specific facts to decide whether the order of the district court should be affirmed and I would so hold.

---

1. Specifically, I cannot subscribe to the majority's prophecy of what the Board will do with respect to the "priority of invention" issue. Nor do I accept any *en banc* requirement in this Circuit for not following a 51-year old decision, *Tucker v. Peiler,* 297 F. 570 (2d Cir., 1924), if applicable.