Jack WEIT et al., Plaintiffs-Appellants,

v.

**CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST CO. OF CHICAGO et al., Defendants-Appellees.**

Nos. 74–1658, 74–1659, 75–1079.

United States Court of Appeals, Seventh Circuit.

Argued April 8, 1975.

Decided May 17, 1976.

Rehearing and Rehearing En Banc Denied July 27, 1976.

Bryson P. Burnham, Watson B. Tucker, Earl A. Jinkinson, Jerald P. Esrick, Carl S. Lloyd, Keehn Landis, Chicago, Ill., for defendants-appellees.

James E. Beckley, Chicago, Ill., John P. Meyer, Danville, Ill., for plaintiffs-appellants.

Before SWYGERT and BAUER, Circuit Judges, and van PELT BRYAN, Senior District Judge.*

FREDERICK van PELT BRYAN, District Judge:

These are consolidated interlocutory appeals from three orders of the United States District Court for the Northern District of Illinois (Thomas R. McMillen, J.).

Plaintiffs Weit, Cox and McLallen were credit cardholders in the Midwest Bank Card System, Inc., and thereafter in the Interbank Card Association. They brought this antitrust action, alleging violations of Sections I and II of the Sherman Act,

* Frederick van Pelt Bryan, of the Southern District of New York, sitting by designation.

against five Chicago banks and the Midwest Bank Card System, Inc., on behalf of themselves and all others similarly situated. The Midwest Bank Card System was a compatible credit card system[1] under which the defendant banks issued credit cards.

The third amended complaint alleged in counts I and II that the defendant banks conspired to fix the interest rates charged cardholders. Counts III and IV repeated the allegations of the first two counts and further charged that defendant banks conspired with their correspondent banks[2] to fix the interest rate charged cardholders. Counts V and VI alleged that defendant banks conspired among themselves and with their correspondent banks to fix the discount charged merchants who participated in the credit card system. It was alleged that this practice raised the prices of goods sold by participating merchants, to the damage of cardholders.

Plaintiffs sought treble damages in excess of three billion dollars, and an injunction directing renegotiation of all cardholder interest rates and merchant discount rates on an individual basis.

On August 3, 1973, the district court certified a plaintiff class for counts I–IV but refused to certify a plaintiff class on counts V and VI "at this stage of the proceedings." 60 F.R.D. 5. No appeal was taken from that order.

On June 4, 1974, the court below denied a motion by plaintiff McLallen for certification of a *plaintiff* class on counts V and VI. McLallen appealed. (No. 74–1659.) On June 13, 1974, the court denied a motion by all three plaintiffs to certify a class of *defendants* on counts I–IV. Plaintiffs appealed from that order. (No. 74–1658.)

Defendants moved to dismiss both appeals for want of appellate jurisdiction. On November 25, 1974 this court ordered that the appeals be consolidated and that the motions to dismiss be argued in conjunction with the argument on the merits.

On November 13, 1974, the district court determined the form of notice to be sent to members of the class certified on counts I–IV. The notice adopted by the court was substantially that suggested by the defendants. Plaintiffs appealed from that order. (No. 75–1079.) The defendants also moved to dismiss this appeal for want of appellate jurisdiction. On March 11, 1975 this court consolidated appeal 75–1079 with the other two appeals and directed that all three appeals be argued together.

The threshold question here is whether the orders of June 4 and 13 and November 13, 1974 are appealable. We conclude that none of them are appealable and thus we do not reach the merits.

### I. Appeals Nos. 74–1658 and 74–1659

Each of these two interlocutory appeals is from an order denying a motion to certify a class. Each is taken pursuant to 28 U.S.C. § 1292(a)(1), which gives courts of appeals jurisdiction over appeals from

"(1) Interlocutory orders of the district courts . . . granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court."

In appeal No. 74–1659, plaintiff McLallen moved for certification of a *plaintiff* class on counts V and VI of the third amended complaint, which alleged a conspiracy by defendants and others to fix the discount rate charged merchants participating in the

---

1. Under a compatible bank credit card system, merchants agree to honor credit cards issued by authorized banks to consumers. The merchant presents the sales slip for payment or credit to his participating bank which, in turn, is credited with the value of the sales slip by the bank which issued the card. The issuing bank, which has extended credit to the cardholding consumer, obtains payment from him.

2. For a general explanation of the correspondent bank relationship *see* Austin and Solomon, A New Antitrust Problem: Vertical Integration in Correspondent Banking, 122 U.Pa.L. Rev. 366, 367–368 (1973), as quoted in *United States v. Citizens and Southern National Bank*, 422 U.S. 86, 114, 95 S.Ct. 2099, 2116, 45 L.Ed.2d 41, 62, 43 U.S.L.W. 4779, 4787–4788 (June 17, 1975).

credit card system. In denying the motion the district court held that "[i]f plaintiff prevails, his presence alone will suffice for whatever injunctive relief is required" and that "[t]he plaintiffs are only incidentally interested" in the relief sought since the merchants themselves are the real parties in interest.

In appeal No. 74–1658, a motion by all of the three plaintiffs to certify a *defendant* class on counts I through IV was denied by the district court for a variety of reasons, including the venue provisions of the National Banking Act, 12 U.S.C. § 94, and the requirements of Rule 23(b), F.R.Civ.P. The class plaintiffs sought to have certified would have consisted of the named defendant banks plus all their correspondent banks in Illinois who participated in either of the two credit cards systems (Midwest Bank Card System and the Interbank-Master Charge System) involved in this litigation.[3] It is clear that neither of the orders appealed from granted or denied an injunction. Both merely refused to certify a class—a plaintiff class on counts V and VI, and a defendant class on counts I–IV.

Plaintiffs, however, argue that each of the orders had the effect of substantially narrowing the scope of such injunctive relief as might eventually be granted and therefore should be considered interlocutory orders refusing an injunction appealable within the purview of 28 U.S.C. § 1292(a)(1). We fail to see how either order has that effect.

■ As to counts V and VI, an injunction against continuation of the present merchant discount practices and the bank interchange practices in favor of one plaintiff would, as a practical matter, result in the elimination of the practices, as the court below indicated.

■ As to counts I through IV, it is clear that any injunction against the named defendant banks would, for all practical purposes, prevent correspondent banks in Illinois from continuing the enjoined practices under the compatible credit card system. Injunctive relief against the named defendants only would not circumscribe the scope of potential relief in the slightest degree.

■ In any event, we agree with the District of Columbia Circuit in *Williams v. Mumford*, 167 U.S.App.D.C. 125, 511 F.2d 363, 369 (1975), that "the denial of class action treatment constitutes neither issuance nor denial of an injunction." [Footnote omitted] Plaintiffs' argument that the refusal to certify a class action affects the scope of potential injunctive relief and is therefore appealable under 28 U.S.C. § 1292(a)(1) is, as the D.C. Circuit said, "an unwarranted expansion of the statutory language [of § 1292(a)(1)]." *Id.*, at 369. *See also Greenhouse v. Greco*, 496 F.2d 213 (5th Cir. 1974); *Weight Watchers of Philadelphia, Inc. v. Weight Watchers International, Inc.*, 455 F.2d 770, 774 (2d Cir. 1972); *City of New York v. International Pipe and Ceramic Corp.*, 410 F.2d 295, 299 (2d Cir. 1969); 9 Moore, Federal Practice, ¶ 110.20, at 232 (2d Ed. 1973) ("The obvious intention [of § 1292(a)(1)] was to permit an appeal from an interlocutory order that temporarily granted part or all of the ultimate relief sought by the bill."). Such cases as *Brunson v. Board of Trustees*, 311 F.2d 107 (4th Cir. 1962) (per curiam), *cert. denied*, 373 U.S. 933, 83 S.Ct. 1538, 10 L.Ed.2d 690 (1963); *Yaffe v. Powers*, 454 F.2d 1362 (1st Cir. 1972); and *Build of Buffalo, Inc. v. Sedita*, 441 F.2d 284 (2d Cir. 1971), relied on

---

**3.** The Midwest Bank Card System, Inc. was formed in November 1966 in the Chicago area by defendants Continental Illinois National Bank and Trust Company of Chicago, Harris Trust and Savings Bank, Pullman Bank and Trust Company, and Central National Bank of Chicago, along with a nondefendant, the First National Bank of Chicago. Defendant American National Bank and Trust Company joined the Midwest Bank Card System in 1969.

Midwest Bank Card System and its member banks became part of the Interbank Card Association (Master Charge), effective January 1, 1969. As members of the Interbank system, defendant banks became part of a nationwide credit card system.

The Midwest Bank Card System, Inc. was named as a defendant in the complaint, but has never been served with process.

by the plaintiffs, are not apposite here. These were civil rights cases where the acts of the defendants were of such a nature that the wrong done could not be remedied by an injunction in favor of individual plaintiffs only. The holdings in these cases that orders denying class action motions were appealable under 28 U.S.C. § 1292(a)(1) were based on special facts and circumstances which are wholly absent here.

We hold that neither of the orders appealed from in Nos. 74–1658 and 74–1659 are orders "granting, continuing, modifying, refusing or dissolving injunctions" within the purview of Section 1292(a)(1) and are therefore not appealable.

### II. Appeal No. 75–1079

The remaining appeal, No. 75–1079, is from the district court's order of November 13, 1974, which adopted, with some modifications, defendants' proposal for notifying the certified plaintiff class of the pendency of this action. The district court rejected plaintiffs' proposal, including their request that the notice be placed in the regular monthly statements sent by the banks to their cardholders. The proposal would have greatly reduced the costs of notice to the plaintiffs.

■ Plaintiffs contend that this interlocutory order is appealable under 28 U.S.C. § 1291 and *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).[4]

■ 28 U.S.C. § 1291, the so-called "final judgment" rule, provides that

"The court of appeals shall have jurisdiction of appeals from all final decisions of the district courts . . . except where a direct review may be had in the Supreme Court."

The general rule is that only orders having the effect of ultimately resolving the litigation are appealable.[5] An exception to that broad rule, however, has been created for "orders which finally determine" controversies in a case that are "separable from, and collateral to, rights asserted in the action" and which are "too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred . . . ." *Cohen, supra,* at 546, 69 S.Ct. at 1225–26, 93 L.Ed. at 1536. The Supreme Court recognized in *Cohen* that this exception to the final judgment rule would apply only to a "small class" of cases. *Id.*, at 546, 69 S.Ct., at 1225–26, 93 L.Ed., at 1536.

The federal courts have been well aware of the importance of narrowly interpreting the *Cohen* exception. *See, e. g., International Business Machines Corp. v. United States*, 480 F.2d 293, 298 (2d Cir. 1973) (en banc); *Weight Watchers of Philadelphia, Inc. v. Weight Watchers International, Inc., supra,* at 773. *See also Handwerger v. Ginsberg*, 519 F.2d 650 (2d Cir. 1975); *Parkinson v. April Industries, Inc.*, 520 F.2d 650, 653 (2d Cir. 1975); *King v. Kansas City Southern Industries, Inc.*, 479 F.2d 1259, 1260 (7th Cir. 1973); *Thill Securities Corp. v. New York Stock Exchange*, 469 F.2d 14, 17 (7th Cir. 1972); *New England Power Co. v. Asiatic Petroleum Corp.*, 456 F.2d 183, 185 (1st Cir. 1972); *Allegheny Airlines, Inc. v. LeMay*, 448 F.2d 1341, 1346 (7th Cir.), *cert. denied*, 404 U.S. 1001, 92 S.Ct. 565, 30 L.Ed.2d 553 (1971).

■ The *Cohen* exception, commonly called the collateral order doctrine, does not reach those orders which are merely steps toward final disposition of the merits of the controversy, *Cohen, supra,* 337 U.S. at 546, 69 S.Ct. at 1225–26, 93 L.Ed. at 1536, nor

---

4. Plaintiffs do not contend that the order is appealable under the so-called "death knell" rule, first promulgated in *Eisen v. Carlisle & Jacquelin*, 370 F.2d 119, 121 (2d Cir. 1966), *cert. denied*, 386 U.S. 1035 (1967). This court has rejected the "death knell" theory in *King v. Kansas City Southern Industries, Inc.*, 479 F.2d 1259 (7th Cir. 1973).

5. The Second Circuit has recently referred to this as "the deeply rooted federal policy against piecemeal review and the obstruction of an ongoing judicial proceeding through such review." *Shattuck v. Hoegl*, 523 F.2d 509, 513 (2d Cir. 1975). *See also Radio Station WOW, Inc. v. Johnson*, 326 U.S. 120, 124, 65 S.Ct. 1475, 1478, 89 L.Ed. 2092, 2097 (1945).

those that do not involve important and unresolved legal questions. An "important factor bearing on the application of the *Cohen* doctrine . . . is whether a decision will settle a point once and for all, as it did in the *Cohen* case, or will open the way for a flood of appeals concerning the propriety of a district court's ruling on the facts of a particular suit." *Weight Watchers of Philadelphia, Inc., supra,* at 773. *See also* 9 Moore, Federal Practice, ¶ 110.10 at 133 (2d Ed. 1973) ("the *Cohen* rule would appear to require the presence of a question of general importance beyond the immediate concern of the particular litigants . . . ."). Unlike *Cohen* itself, or the recent case of *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), which adopted the *Cohen* exception, we find no broad questions of general applicability involved here. The questions decided against the plaintiffs will not conclusively settle any issue other than the propriety of the notice in this particular case under the facts here involved. If review were to be granted on this appeal, we see no reason why almost every order specifying the form and content of notice in a class action would not be appealable. Such a result would not be compatible with the strong federal policy against most interlocutory appeals, and the sound reasons for the final judgment rule.

Moreover, the propriety of the notice to the plaintiff class here is an issue capable of review after the entire case has been resolved in the district court. In *Cohen,* the question of the applicability of the New Jersey statute requiring plaintiffs in derivative actions to post security could clearly not arise on appeal from final judgment, except in an academic sense, since the right conferred by the statute would be irreparably lost if the case proceeded without the posting of that security. In *Eisen, supra,* the issue of the propriety of assessing the cost of notice against the defendants in a class action would have escaped appellate review had the defendants prevailed on the merits, since at that point it would, in all likelihood, have been impossible to collect the cost of the notice from the single plaintiff. In the case at bar, however, the con-

tent and form of the notice can be reviewed on appeal from a final judgment regardless of who prevails on the merits. There could be no suggestion that defendant banks here would be unable to reimburse the plaintiff for any part of the cost of the notice which a court might later hold to have been improper. We hold that the interlocutory order appealed from in No. 75–1079 is not appealable under 28 U.S.C. § 1291.

The motions of the defendants to dismiss the appeals in Nos. 74–1658 and 74–1659 and 75–1079 are granted. The appeals are dismissed and the case remanded to the district court for further proceedings.

SWYGERT, Circuit Judge (dissenting).

For reasons discussed in my dissent in *Anschul v. Sitmar,* No. 74–1908 (7th Cir., May 17, 1976), I would hold that all three interlocutory orders are appealable and that this court has jurisdiction to review them.

Judge Bryan says that as a "practical matter" an injunction granted one individual plaintiff, enjoining the continuation of present discount practices and bank interchange practices, would eliminate these practices. Similarly, he states that any injunction against the named banks would for "all practical purposes" cover the correspondent banks. With deference to Judge Bryan's views, I do not think we should resolve the jurisdictional question, and by indirection the rights and duties of class members, on a "practical" basis. Rule 23, Fed.R.Civ.P., in no way conditions the right to maintain a class action upon such a prediction, and I do not think it permissible for a court to introduce such a vague and uncertain criterion. If absent class members are not afforded legal protection when they are entitled to it, or if proposed class defendants have no legal obligation to obey an injunction, practicality may prove a weak reed to rely upon. In any event, it simply cannot be denied that ultimate denial of class certification does have the effect of refusing injunctive relief as to the absent class members. Since I believe that the refusal of an immediate appeal of an order which denies class certification reduces the

chance for an effective appeal of this question to almost nothing, I cannot agree that the orders in this case fail to fall within section 1292(a)(1), which makes appealable "[i]nterlocutory orders of the district court . . . refusing injunctions . . . ."

As to the appeal on the question relating to notification, a delay in considering the district court's ruling until after the merits are heard is, to my way of thinking, an effective means of aborting any meaningful appeal of the question. I respectfully dissent from the view that the "content and form of the notice can be reviewed on appeal from a final judgment regardless of who prevails on the merits." How can serious faults in content and form be effectively rectified if such faults are found to exist only on appeal after the merits have been tried and the faulty notices have been sent?