## In re AMPICILLIN ANTITRUST LITIGATION.

### M.D.L. No. 50. Misc. No. 45–70.

United States District Court,
District of Columbia.

May 21, 1979.

See also, D.C., 82 F.R.D. 647, and D.C., 82 F.R.D. 655.

David I. Shapiro, James vanR. Springer, Washington, D.C., for City, County and State plaintiffs.

Thomas H. Liddle, III, Antitrust Division, U.S. Dept. of Justice, Washington, D.C., for plaintiff, the United States.

Arnold Bauman, Robert F. Dobbin, New York City, for defendants, Beecham Group Limited and Beecham Inc.

Jerome G. Shapiro, Alan H. McLean, New York City, Philip A. Lacovara, Washington, D.C., for defendant, Bristol-Myers Co.

## MEMORANDUM APPROVING BEECHAM CCS SETTLEMENT

CHARLES R. RICHEY, District Judge.

The Court now has before it the Settlement Agreement dated November 1, 1978, between defendants Beecham Group Limited and Beecham Inc. (collectively "Beecham") and the representatives of the city, county and state ("CCS") plaintiff classes. This agreement is conditioned upon the Court's approval of a proposed consent decree between the United States and Beecham. A final judgment in accordance therewith is entered of even date herewith. Beecham's co-defendant, Bristol-Myers Company ("Bristol"), strenuously objects to both settlements. No one else has objected to the Beecham-CCS settlement. The Court has heard arguments of counsel for all parties at preliminary and final hearings concerning both settlement proposals, and has had the benefit of papers filed in sup-

port thereof and in opposition thereto, as well as the information and experience the Court has gained in the previous discovery, pretrial and settlement proceedings in these cases.

The agreement provides for the settlement of claims based on the antitrust violations with regard to ampicillin and other semisynthetic penicillin drugs which have been or might be asserted against the Beecham defendants by the CCS plaintiffs and classes in this litigation, and by potential similar plaintiffs in other political entities of the United States. Beecham will give the plaintiffs certain economic relief and other cooperation in return for its dismissal. Beecham will establish a fund of $2,070,000, with interest at the average prime rate from November 1, 1978, on behalf of the classes. This amount will not be distributed to class members until the settlement or final adjudication of the CCS case against Bristol. This delayed distribution will preserve the fund against the expense of two separate distributions. The fund will continue to earn interest until the Bristol case is resolved. The settlement also contains a most-favored-nations clause, by which the fund will be reduced proportionally if the CCS plaintiffs agree to a settlement with Bristol of less than $6.44 million before October 31, 1980, or more than 30 days before a firm trial date. In addition, Beecham will assist the plaintiffs in their prosecution of this case against Bristol, by helping them to obtain the deposition and trial testimony of certain Beecham employees and former employees.

A preliminary hearing regarding the Beecham-CCS agreement was held in this Court on November 8, 1978. On November 17, 1978, the Court issued an order based upon the information gathered at that hearing. That order preliminarily determined that "the proposed settlement is within the range of possible approval." Implicitly, it rejected the initial objections of Bristol-Myers Company. In addition, the Court conditionally certified for settlement purposes a "Residual CCS-Beecham Settlement Class" composed of certain political entities not already included as plaintiffs in the pending actions, established a date for the final settlement hearing, and ordered that notice be sent to class members and potential members concerning the settlement proposal and hearing date.

Pursuant to the November 17 order, notice of the proposed settlement was sent to some 49,000 potential class members, including cities, counties, states, hospital and school districts which may have purchased the drugs in question. This notice fully informed class members of material aspects of this litigation, of the proposed settlement and their rights to object to, comment upon, or exclude themselves from it. Because no immediate distribution of the fund is contemplated, class members were not asked to respond with proofs of damages at this time. The evidence before the Court indicates that the liaison attorneys for the classes have made every effort to properly notify all potential class members. Individual notice has been afforded to all potential class members who could be identified with reasonable effort. It appears that this has been the best notice practicable under the circumstances, as required by Fed.R.Civ.P. 23.

The Court has received 170 timely requests for exclusion from this litigation from recipients of the notice, as well as five late requests. Many of these requests to opt out of the settlement are from non-members of the plaintiff class, who have requested exclusion because they never purchased the drugs in question. Such requests were, of course, unnecessary, and can have no effect on the Court's approval or disapproval of the settlement. So far as the Court knows, no drug purchasers have requested exclusion from the settlement. Section 5 of the settlement agreement gave Beecham the right to withdraw from the agreement if, in its judgment, a substantial proportion of class members requested exclusion from the settlement. Beecham has chosen not to exercise this option. This decision can be understood as Beecham's determination that the requests for exclusion are not substantial enough to create a danger of extensive further litigation by

"opt-outs." In the Court's view, the requests for exclusion are of insufficient moment to draw into question the validity of the settlement from the perspective of class members. Furthermore, it is unlikely that Beecham will be prejudiced if the Court accepts those exclusion requests from notice recipients which were filed late but prior to the final settlement hearing. Therefore, all potential class members which filed requests for exclusion prior to April 9, 1979, will be excluded from this litigation, pursuant to Fed.R.Civ.P. 23(c)(2).

No class member has in any way objected to the settlement, nor did any previously unrepresented class member appear at the final settlement hearing to offer advice, evidence, comments or suggestions concerning the settlement agreement. This failure of class members to attack the adequacy of the settlement may be considered in determining the value of the settlement to class members.

It is apparent from the Court's own knowledge of this case that this settlement was negotiated at arm's-length, and with the utmost regard for the interests of the classes. Substantial monetary relief is obtained on behalf of the classes. The liaison attorneys estimate that it amounts to at least one-half of the amount of potential damages based on direct purchases which class members could prove at trial before trebling. The recovery of actual single damages must be the basis for the Court's assessment of monetary recovery in an antitrust settlement. *Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

Liaison attorneys for the classes express near certainty that an ultimate award if this case is litigated to conclusion will be much greater than the present settlement fund, and that Beecham's share of such an award would amount to a greater sum than it now offers. However, they point out that under the antitrust laws, as Beecham's alleged co-conspirator, Bristol-Myers will remain liable for the full amount of treble damages that could have been collected from the original defendants, less only the actual amount paid by Beecham. It is ar-

gued that the Court need not examine this partial settlement as closely as it would a complete settlement, since the class will relinquish no part of its potential recovery. This is fair, they argue, since Bristol is probably responsible for the larger share of illegal profits. (See discussion below concerning most-favored-nations clause.) In addition, the class will benefit by Beecham's aid in the litigation against Bristol.

The proposition upon which the attorneys rely is well-established antitrust law. *See Wainwright v. Kraftco Corp.*, 58 F.R.D. 9 (N.D.Ga.1973); *Baughman v. Cooper-Jarrett, Inc.*, 530 F.2d 529 (3d Cir.), *cert. denied*, 429 U.S. 825, 97 S.Ct. 78, 50 L.Ed.2d 87 (1976); *Zenith Radio Corp v. Hazeltine Research, Inc.*, 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971). While this is indeed an added argument in favor of the settlement, the Court has not relied heavily on this proposition to determine the adequacy of the settlements. Risks inhere in the most airtight of cases. In this Court's view, its present certainty is an important argument in favor of this settlement. Bristol's continuing liability has been of greater significance in this Court's assessment of the value of Beecham's litigation cooperation which is part of its consideration for the settlement. It is apparent that Beecham's assistance in the case against Bristol will prove invaluable to the plaintiffs, and adds substantially to the economic value of the settlement package to the plaintiff classes. (*See* Order approving U.S.-Beecham Consent Decree, issued of even date.)

The remaining defendant in this litigation, Bristol-Myers, has raised several objections to this settlement. Bristol's objections concerning the discovery provisions of the settlement and Beecham's dismissal from the litigation are dealt with in orders concerning Bristol's motion to amend its answers and the United States-Beecham consent decree, which are issued of even date herewith. It should be noted that Bristol has no standing to object to this settlement between Beecham and the CCS plaintiffs. *See In re Nissan Motor Corp. Antitrust Litigation*, 552 F.2d 1088, 1103 n. 17 (5th

Cir. 1977). Furthermore, it seems unlikely that its general objections are raised from any legitimate concern to protect the classes.

Bristol has raised one argument which relates specifically to the Beecham-CCS agreement, and one aspect of which implicates the settlement's fairness to the classes. Bristol argues that the most-favored-nations clause may harm the classes and Bristol as a litigant, by forcing upon them the continued litigation of the case or a reduction in the total CCS recovery. The design of the clause assures that it will not operate prejudicially. The dollar amount of $6.44 million at which the clause comes into operation is intended to preserve the Beecham-Bristol damage ratio which was established in a global settlement offer of 1975. The ratio is the same as was approved by the Court for the settlement of other class claims against Beecham and Bristol in this litigation. *See* Order of October 20, 1978, approving wholesale and retail druggist and private hospital (WRPH) settlement. At one time or another, all of the attorneys in this litigation have represented that this ratio is based on the estimated proportion of Beecham and Bristol ampicillin sales. Assuming that Beecham's settlement payment bears some relation to actual damages, it is unlikely that the $6.44 million figure which would trigger the clause is so low as to bar reasonable settlement discussions. Furthermore, by its own terms, the clause is limited in duration. Its inhibiting effect on negotiations will cease by November 1980. The establishment of a firm trial date by this Court would further abbreviate the clause's operation. Therefore, it seems unlikely that either Bristol or the classes will be harmed by the clause. Rather, the classes may benefit from any additional incentive it may create for favorable settlement terms.

The Court has carefully considered all the terms of the proposed Beecham-CCS settlement, and the objections thereto. It has determined that the proposed settlement is fair, reasonable and adequate, and in the best interests of the CCS classes, and will approve it pursuant to Fed.R.Civ.P. 23(e).