In re BEEF INDUSTRY ANTITRUST LITIGATION, M. D. L. Docket No. 248.

MEAT PRICE INVESTIGATORS ASSOCIATION et al., Plaintiffs-Appellees,

v.

IOWA BEEF PROCESSORS, INC., and Farr Farms Company and Farr Feeders, Inc., Defendants-Appellants.

Darrell CAMERON et al., Plaintiffs-Appellees,

v.

IOWA BEEF PROCESSORS, INC., and Farr Farms Company and Farr Feeders, Inc., Defendants-Appellants.

Don LUDVIGSON et al., Plaintiffs-Appellees,

v.

IOWA BEEF PROCESSORS, INC., and Farr Farms Company and Farr Feeders, Inc., Defendants-Appellants.

In re BEEF INDUSTRY ANTITRUST LITIGATION, M. D. L. No. 248.

MEAT PRICE INVESTIGATORS ASSOCIATION et al., Plaintiffs,

v.

IOWA BEEF PROCESSORS, INC., Defendant-Appellant,

v.

SPENCER FOODS, INC., Defendant-Appellee.

Darrell CAMERON et al., Plaintiffs,

v.

IOWA BEEF PROCESSORS, INC., Defendant-Appellant,

v.

SPENCER FOODS, INC., Defendant-Appellee.

Don LUDVIGSON et al., Plaintiffs,

v.

IOWA BEEF PROCESSORS, INC.,

Defendant-Appellant,

v.

SPENCER FOODS, INC., Defendant-Appellee.

In re BEEF INDUSTRY ANTITRUST LITIGATION, M. D. L. No. 248.

Don LUDVIGSON et al., Plaintiffs-Appellees,

v.

IOWA BEEF PROCESSORS, INC. and MBPXL Corporation, Defendants-Appellants.

Nos. 78–3345, 78–3346 and 79–1010.

United States Court of Appeals, Fifth Circuit.

Nov. 26, 1979.

Rehearing and Rehearing En Banc Denied Dec. 21, 1979.

Witherspoon, Aikin & Langley, Donald L. Davis, James W. Witherspoon, Hereford, Tex., for plaintiffs-appellees in No. 78–3345.

Charles T. Newton, Jr., Houston, Tex., for Farr Farms Co., et al.

Briggs & Morgan, Edward C. Stringer, Peter W. Sipkins, St. Paul, Minn., for defendant-appellee in No. 78–3346.

Stephen D. Susman, Houston, Tex., amicus curiae, for plaintiffs in In re Corrugated Container Antitrust Litigation, MDL No. 310.

R. Clifford Potter, Chicago, Ill., amicus curiae, for Boise Cascade Corp.

Leslie H. Arps, New York City, amicus curiae, for Westvaco.

Freeman, Rothe, Freeman & Salzman, Chicago, Ill., for defendant-appellant in No. 79–1010.

Edward W. Rothe, James T. Malysiak, Chicago, Ill., for defendants-appellants in all cases.

Shook, Hardy & Bacon, John C. Dods, James T. Newsom, Kansas City, Mo., for MBPXL Corp.

Hawkins & Norris, Des Moines, Iowa for plaintiff-appellee in No. 79–1010.

Glenn L. Norris, Des Moines, Iowa, Cochrane & Bresnahan, John A. Cochrane, St. Paul, Minn., for plaintiffs-appellees in Nos. 78–3345 and 79–1010.

Debevoise, Plimpton, Lyons & Gates, Robert J. Geniesse, Roger E. Podesta, New York City, for Flavorland Ind., Inc.

Before WISDOM, AINSWORTH and RONEY, Circuit Judges.

WISDOM, Circuit Judge:

These three appeals involve the "packer" side of the Beef Industry Antitrust Litigation; that is, they are appeals in suits by cattlemen against beef processors.[1] The Judicial Panel on Multidistrict Litigation assigned these three cases to the Northern District of Texas for consolidated or coordinated pretrial proceedings with the "retailer" cases. *In re Beef Industry Antitrust Litigation,* 1977, 432 F.Supp. 211. This Court consolidated for argument the appeals in Nos. 78–3345, 78–3346, and 79–1010.

There are three antitrust actions against beef packers: (1) *Price Investigators Association (MPIA) et al v. Iowa Beef Processors, Inc. (IBP),* filed by the MPIA, an unincorporated association having about 450 cattle raisers as members; (2) *Cameron et al v. IBP,* in which the plaintiffs are Texas cattle raisers; (3) and, *Ludvigson et al v. IBP,* in which four named plaintiffs seek to represent a nation-wide class consisting of sellers of fat cattle. The defendants common to the cases are four beef packers: IBP, MBPXL Corporation (MBPXL); Spencer Foods, Inc. (Spencer); and Flavorland Industries, Inc. (Flavorland). Each of the complaints alleges price-fixing and monopolization in violation of the federal antitrust laws, Sherman Antitrust Act, §§ 1 & 2, 15 U.S.C. §§ 1 & 2, particularly through the alleged manipulation of beef prices reported in the "Yellow Sheet", published by the National Provisioner, Inc., the leading meat price reporter. Each complaint alleges that there are other co-conspirators. The *Ludvigson* suit names two additional defendants: the Estate of Currier J. Holman, credited with masterminding IBP's phenomenal growth; and the National Provisioner, Inc., publisher of the Yellow Sheet. The three complaints state virtually the same operative facts and charges against the defendants.

### No. 78–3345

This appeal involves the efforts of one of the four defendants, Spencer, to settle its liability in all three cases. In September 1977, the named plaintiffs in *Ludvigson* moved for certification of a class consisting of all persons engaged in the business of raising what is known in the cattle business as fat cattle and who have within the four years immediately preceding the filing of this action sold more than 100 head of fat cattle in any one year. Before the court ruled on that motion, the plaintiffs in all three cases, after lengthy negotiations, made a settlement with Spencer. Negotiations began in February 1978. They were at arms-length and hotly contested. No other defendant was a part of the negotiations. The settlement agreement in substance provided that: (1) in return for a lump sum of $425,000, the plaintiffs' claims against Spencer in all three cases would be dismissed; and (2) Spencer would allow the plaintiffs access to its records and employees for discovery purposes.

---

1. The "retailer" side of the litigation consisted of thirteen actions by the Meat Price Investigation Association, representing about 450 cattlemen, and by cattlemen, ranchers, and cattle feeders against large retail food chains, a wholesale grocer, the retail chains' national trade association, and a beef industry price reporting publication. The Judicial Panel on Multidistrict Litigation consolidated all these cases for pre-trial proceedings before the district judge trying the instant cases. *In re Beef Industry Antitrust Litigation,* 419 F.Supp. 720 (Jud.Pan.Mult.Lit.1976). The trial court dismissed the complaints in reliance on *Illinois Brick Co. v. Illinois,* 1977, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707. *Becker, et al v. Safeway Stores, Inc.,* No. CA 3–76–1361–C (N.D.Tex.). This Court reversed and remanded. *In re Beef Industry Antitrust Litigation,* 5 Cir. 1979, 600 F.2d 1148.

There was massive discovery in the *Becker* case. In the instant cases, the district court took judicial notice of the transcript and of matters discovered in *Becker.*

On May 25, 1978, the trial judge met with counsel for the named parties to the settlement. Upon joint motion and stipulation by the plaintiffs and Spencer, he entered an order, "Order Conditionally Determining a Temporary Settlement Class and Tentatively Approving Proposed Settlement". The notice went to those persons whom the settling defendant, Spencer, agreed were the appropriate parties to receive notice.

The order created a temporary settlement class in *Ludvigson* "for purposes of this settlement" consisting of

All persons, except defendants, who are engaged in the business of raising what is commonly known in the cattle business as fat cattle and who have in the period in question sold more than 100 head of fat cattle per annum in any year since January 1, 1968, including all persons who have sold fat cattle to the defendants and their suppliers.

The order provided for notice to be sent to all members of this temporary class and fixed a hearing for August 11, 1978. The order also approved the form of notice drafted by the settling parties. The notice informed the class in detail of the terms of the settlement. It also stated that the $425,000 would be used to reimburse class and non-class plaintiffs for past and future litigation expenses and that therefore it was unlikely that any funds would be available for distribution to the class. On June 8 the district judge denied motions by the non-settling defendants seeking reconsideration of this order and seeking an opportunity to present evidence tending to show that the order was improper.

On August 11 the district judge held an extensive evidentiary hearing on the proposed settlement. The proponents presented evidence showing that (1) 54,800 notices had been sent; (2) about two percent of the class had opted out of the temporary settlement class and most of these were in other cases in the Beef Industry Litigation; (3) almost no class members had filed objections; and (4) Spencer was a relatively small firm[2] in bad financial shape and had received a takeover offer from a healthy company, Land O' Lakes Cooperative, conditioned on settlement of these three antitrust actions. W. D. Farr of Farr Farms Co. and Farm Feeders, Inc., affected class members, appeared and filed an objection. In addition, the non-settling defendants filed objections.

The trial court judicially noticed the evidence already before it concerning the propriety of class certification in *Becker v. Safeway Stores, Inc.*, the "retailer" cases.[3] The court took evidence from objectors Farr and IBP, through its general counsel, and from the settling defendant, Spencer, through its counsel. The court also heard from all counsel of record in attendance.

On August 21, 1978, the district judge determined the existence of a permanent settlement class and approved the proposed settlement. The court took judicial notice of the propriety of the similar class certification in *Becker v. Safeway Stores*. He found these factors favoring settlement: the uncertainty of trial of a complex mat-

---

**2.** In 1977 Spencer lost over two million dollars; IBP had a net profit of thirty million dollars. App. 00197 et seq. Based upon net worth IBP was over 10 times larger than Spencer.

A footnote in Flavorland's brief, p. 4, states: "All four packer defendants have been the subject of takeover bids in recent years. The prices paid or offered in connection with those bids provide an instructive comparison as to the relative financial strength of the packer defendants. In May 1978, Land O' Lakes Corporation offered to acquire Spencer Foods for some $12 million. Aug. 11 Tr. at 78. In several transactions beginning in 1974 and ending in March 1977. Foxley & Co. purchased all of Flavorland's outstanding stock for slightly over

$8,750,000. MBPXL was the subject of two competing tender offers in 1978, one by Cargill, Inc. for more than $67 million, Wall Street Journal, December 6, 1978, p. 40, and the other by ConAgra Inc. for about $65 million. Wall Street Journal, September 29, 1978, p. 6. Iowa Beef was the subject of a tender offer (which subsequently fell through) by Pacific Holding Corp. of $60 per share for the 82% of its stock not already owned by Pacific Holding. If all of Iowa Beef's common stock had been purchased at this price, the total Iowa Beef purchase price would have been over $300 million. Wall Street Journal, December 7, 1978, p. 6.

**3.** See footnote 1.

ter; the continued denial of liability by the settling defendant; the substantial benefit to class members; the fact that other, more substantial defendants remained in the litigation; and the uncertain financial condition of the settling defendant. Those factors outweighed the argument against settlement. Accordingly, the court entered judgment on August 25. The non-settling defendant IBP appeals this judgment. So too do Farr Farms and Farr Feeders. MBPXL did not appeal.

## I.

### *Standing and Unappealability of Order*

■ A. As a non-settling defendant, IBP is not prejudiced by the settlement and therefore has no standing to complain about the settlement. *In re Nissan Motor Corp. Antitrust Litigation,* 5 Cir. 1977, 552 F.2d 1088. In *Nissan* purchasers of Datsun automobiles brought an antitrust action against Datsun dealers, Nissan Motor Corporation, and its Japanese parent, Nissan Motor Company, Ltd. The dealers and the plaintiffs agreed to an early settlement which the trial court, after a hearing, approved. Non-settling defendants were not present at the hearing. This Court noted: "Counsel for Nissan Japan and Nissan U.S.A. did not attend this hearing since [as non-settling defendants] they were not entitled to object to the merits of the proposed settlement. *See Seiffer v. Topsy's Int'l, Inc.,* 70 F.R.D. 622, 631 n.11 (D.Kansas 1976); *Wainwright v. Kraftco Corp.,* 53 F.R.D. 78, 81 (N.D.Ga. 1971), settlement approved, 58 F.R.D. 9, 11–12 (1973)." *Id.* at 1103 n.17.

In *Topsy's International* the court dismissed objections from defendants to a proposed settlement because they "lack[ed] any standing to even raise an objection" since they were not members of the class. 70 F.R.D. at 627, nn.5 & 6. In *Wainwright v. Kraftco,* the district court considered the propriety of a pre-certification settlement without giving notice to the non-settling defendants. Faced with objections to the proposed settlement, the court in *Wainwright* held:

[f]irst, in a Rule 23(e) motion the parties with which the court is primarily concerned are the class of plaintiffs and the settling defendant. The non-settling defendants really have no standing to object to [the] settlement.

*Id.* at 81. Citing *Wainwright* and also *Philadelphia Electric Co. v. Anaconda American Brass Co.,* E.D.Pa.1967, 42 F.R.D. 324, Professor Newberg states with respect to class actions:

Any party to the proceeding has standing to object to the proposed settlement. Thus, an objection may be registered by any class member . . . [or] any settling defendant. . . . Finally, non-settling defendants in a partial settlement have no standing to object to the fairness or adequacy of the settlement, but they may object to any terms which preclude them from seeking indemnification from the settling defendants.

3 *Newberg on Class Actions* § 5660b at 564–65 (1977).

*See also Ampicillin Antitrust Litigation,* D.D.C.1979, 82 F.R.D. 652, in which Bristol-Myers, a non-settling defendant, objected to a proposed settlement between the plaintiffs and defendant Beecham. The court, citing *Nissan,* said: "It should be noted that Bristol has no standing to object to this settlement between Beecham and the . . . plaintiffs . . . Furthermore, it seems unlikely that its general objections were raised from any legitimate concern to protect the classes". *Id.* at 654–55.

■ In answer, IBP asserts that it does not challenge the settlement itself or the monetary adequacy of the settlement, apparently admitting its lack of standing to attack the settlement on its merits. Instead, IBP challenges the *procedures* followed by the district court in approving it. But IBP cannot do indirectly what it may not do directly.

IBP points to *Nissan,* in which the non-settling defendants had standing to be heard on the form of notice to be sent to class members concerning a partial settlement. In that case, however, the members of the class received a "combination" notice

not only of the proposed partial settlement, but also of the district court's certification of a *litigation* class under Rule 23(b)(3) and the class members' right to "opt out". Unlike the situation here, therefore, in *Nissan* non-settling defendants were directly affected by the notice.

■ B. In any event, the district court's order is not final as to the non-settling defendants and is therefore unappealable. *Darrow v. Southdown, Inc.,* 5 Cir. 1978, 574 F.2d 1333, involved a similar situation. In *Darrow,* two district courts had approved partial settlement of class action shareholder derivative actions without holding any hearings. Mize and Addis, two defendants, appealed the judgment not as defendants but as security holders of the corporation. They objected to the court's failure to articulate the reasons in support of its approval. This Court held that "on principles akin to standing, Mize and Addis cannot object to the settlement". *Id.* at 1336. We explained:

> Because Mize and Addis remain defendants in the suits, they cannot appeal the judgments as defendants aggrieved by its terms. The District Courts' judgments are not final under 28 U.S.C. § 1291 as to Mize and Addis. *Goldstein v. Andresen & Co.,* 5 Cir. 1972, 465 F.2d 972, 973, holds that a partial settlement among some plaintiffs and defendants is final "as to the rights and liabilities of the settling parties (none of whom seeks to appeal) because it effectively terminates the controversy among them." As to the parties among whom live controversies remain, such order is nonappealable because it does not end the litigation by finally determining the rights of those parties.
>
> Mize or Addis may, of course, appeal from any final judgment rendered in the

portions of the suits left open for trial. However, such an appeal will not involve the validity of the settlement or the procedures followed in its approval.

*Id.* at 1336 n.3.

In *Goldstein v. Anderson,* cited in *Darrow,* we held that, "As to [the non-settling defendant] the order does not 'end the litigation by fully determining the rights of the parties' and is therefore not appealable." 465 F.2d at 973. We have exactly the same situation in this litigation with respect to the non-settling defendants.

Affected members of the plaintiff class, Farr Farms and Farr Feeders, have full standing to appeal the merits of the agreement and the procedures relating to its approval by the court. Notwithstanding the dismissal of the defendant IBP's appeal, the Court must consider the issues raised by IBP because Farr Farms and Farr Feeders have adopted the arguments in IBP's briefs.

## II.

### Temporary Settlement Class

One of the most controversial issues in the management of complex class-action litigation is whether a district court, in certain circumstances, should recognize a tentative or temporary settlement class for the approval or disapproval of a pre-certification settlement. The objectors rely heavily on the Manual For Complex Litigation (4th Ed. 1977) (Manual), published under the aegis of the Federal Judicial Center. Professor Arthur R. Miller, who served as a special consultant on the original Manual and each successive revision, has written, "personally, I have always found this to be a close debate".[4] Miller, An Overview of Federal Class Actions: Past, Present and Future (Fed. Jud. Center 1977). The Manual states the case strongly against the prac-

---

4. Professor Miller concluded, however: "I have become convinced in recent years that there really is a serious problem of the judge not having enough information prior to certification to do a completely effective job under Rule 23(e). What is clear, is that if the court is going to consider a proposed settlement prior to formal certification, he is advised to demand a full presentation on all of those aspects of certification bearing on an adequacy of representation and class homogeny. Ironically, if he does, he might as well complete the Rule 23(c)(1) process." Miller, An Overview of Federal Class Actions: Past, Present and Future 60 (Fed. Jud. Center, Dec. 1977).

tice of forming a temporary settlement class before certification:

> There is, to say the least, serious doubt that this practice is authorized by Rule 23 as amended, even if it is conceded that the courts are expected to develop new methods of employing the amended Rule 23.
>
> Consideration of this practice in view of the provisions of Rule 23 and experience to date leads to the conclusion that *tentative classes for the purposes of settlement * * * should not be formed.*

Manual § 1.46 at 60.

In resorting to the Manual for guidance, however, judges and lawyers should bear in mind that the Board of Editors of the Manual was careful to say in the Foreword to the fourth edition:

> This Manual is designed also to stimulate the devising of procedures appropriate in solving new problems as they arise. It is intended to be a living document into which desirable techniques proved by experience will be incorporated in the future. Rarely does complex litigation follow a set pattern. Accordingly, flexibility should be the keynote in applying the suggestions contained in this Manual.

Manual at xx. This language carries forward the thought expressed by Chief Judge Alfred P. Murrah in the Foreword to the *Handbook of Recommended Procedures for the Trial of Protracted Cases,* issued in 1960, 25 F.R.D. 351: "[I]t contains neither a simplified outline for the easy disposition of complex litigation nor an inflexible formula or mold into which all trial and pre-trial procedure must be cast. Rather, it is a collection of procedures which are 'Recommended,' because as the product of experience and the development of able minds, they are deemed worthy of consideration by all." Manual at xix.

■■ The recommendations of the Manual in § 1.46 are intended to prevent collusion, individual settlements, "buy-offs" where the class action is used to benefit some individual at the expense of absent members, and other abuses. See Appendix to this opinion for the complete list of reasons the Manual gives for its position. Here the absence of abuse of the class action and the district court's close supervision of the parties make the recommendations inapplicable. (1) The court found that the settlement was "not collusive". (2) One small defendant settled; another small defendant, Flavorland, is in the process of settling. The plaintiffs made clear to the court that they intend to pursue their claims against the non-settling defendants. (3) The proceeds of the settlement cannot be used to pay plaintiffs' attorneys' fees. (4) Spencer had suffered a sharp decline in its net income and net worth but had received a tender offer from Land O' Lakes Cooperative, a financially strong cooperative, conditioned upon Spencer's prompt settlement of the antitrust actions. (5) The parties to the settlement had kept the court informed during their negotiations. The court here held an extensive hearing to determine not only the fairness of the settlement but also to make sure that the plaintiffs did not benefit at the expense of absent class members. (6) Underlying the special circumstances in the case is the general consideration that courts favor settlement. Parties to a dispute should be able to settle it themselves without interference from nonprejudiced third parties, especially when the settling parties are acting under judicial scrutiny.

■ The fears expressed in § 1.46 of the Manual, based on the experience of judges and lawyers familiar with complex litigation, should, of course, be given weight by any trial judge considering a tentative or temporary pre-certification settlement class. Judges and commentators, however, take a more flexible position than the Manual. It is fair to state that as the law now stands, tentative or temporary settlement classes are favored when there is little or no likelihood of abuse, and the settlement is fair and reasonable and under the scrutiny of the trial judge. Those conditions are met here.

Professor Hubert B. Newberg, in his comprehensive treatise, Class Actions (1977), disagrees with the position taken in the

Manual—at least to the extent that it may be construed as inflexible. He writes:

> In many practical respects the Manual's position is questionable. In regard to the assurance of adequate representation, the Manual ignores the court's role to assure protection of the rights and interests of the absent class members in all phases of class action litigation. Further, the formation of a tentative class does not deny the members of the class an opportunity to show the inadequacy of representation. A class member may attack the adequacy of representation (1) through objections to the settlement, (2) on appeal after approval of the settlement, (3) by collateral attack, or (4) pursuant to Rule 60(b). The Manual also assumes that the scope, identity of membership, aggregate and individual claims, and the presence or absence of conflicting interests within the class cannot be determined without a hearing. These assumptions may or may not be valid.
>
> .    .    .    .    .
>
> At the present time, the Manual's position discouraging any settlement negotiations before a formal class ruling appears to undercut other general policies encouraging settlements, and would instead interject an inflexible rule that may well be counterproductive in numerous situations. The influence of the Manual's posture in this regard remains to be tested in the courts.

3 Newberg, Class Actions § 5570(c) at 475–76.

Law review comment seems to encourage, in proper circumstances, the creation of a temporary settlement class. "So long as neither abuse of the class action device nor prejudice to the class members appears possible, such a settlement [prior to class certification] should be encouraged since it can spare the court from managing a complicated and time-consuming item of litigation." McGough and Lerach, *Termination of Class Actions: The Judicial Role*, 33 U.Pitt.L.Rev. 445, 457 (1972). Again: "[w]hen all class members have individually recoverable claims, a tentative settlement class may be acceptable. In that situation, class members have a genuine option to opt out of the settlement and can benefit from specific knowledge of the amount of recovery they can expect from remaining in the class. Moreover, since a class member with a recoverable claim is likely to have his own attorney and an incentive to investigate his claim, he may be able to make an effective evaluation of the settlement despite the lack of information supplied by the negotiating parties. To the extent that absentees are able to exercise supervision over the settlement, the weak posture of the judge becomes less troubling. On the other hand, large claimants might be able to gather even more detailed information about the actual negotiations if there is early certification with the opportunity to intervene. In addition, an absentee might have his own suit delayed if all similar cases are consolidated for pre-trial proceedings and the judge refuses to allow any discovery until the tentative class settlement has been negotiated. On balance, however, these costs would appear to be offset by the advantage of being able to opt out with knowledge of the benefits of remaining in the class." Comment, *Developments—Class Actions*, 89 Harv.L.Rev. 1318, 1557. *See also* Note, *The Tentative Settlement Class and Class Action Suits under Title VII of the Civil Rights Act*, 72 Mich.L.Rev. 1462, 1471 (1974).

The cases confirm the commentaries.[5] *City of Detroit v. Grinnell*, 2 Cir. 1974, 495

**5.** The following cases are examples of the use of a temporary settlement class in class actions: *Girsh v. Jepson*, 3 Cir. 1975, 521 F.2d 153; *Grunin v. International House of Pancakes*, 8 Cir. 1975, 513 F.2d 114, *cert. den'd* 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93; *Greenfield v. Villager Indus.*, 3 Cir. 1973, 483 F.2d 824; *Brucker v. Thyssen-Bornemisza Europe, N.V.*, S.D.N.Y.1976, 424 F.Supp. 679, *aff'd*, 2 Cir. 1977, 559 F.2d 1202; *Alaniz v. California Processors, Inc.*, N.D.Cal.1976, 73 F.R.D. 269, *modified*, 73 F.R.D. 289; *In re National Student Marketing Litigation*, D.D.C.1974, 68 F.R.D. 151; *Stabler Construction Co. v. R. G. Sloane Mfg. Co.*, C.D.Cal.1974, No. 71–1589–ALS; *Colson v. Hilton Hotels Corp.*, N.D.Ill.1972, 59 F.R.D. 324; *Altman v. Liberty Equities Corp.*, S.D.N.Y.1972, 54 F.R.D 620; *Philadelphia*

F.2d 448, involved a partial class action settlement before certification. The settling parties "assumed the existence of a proper class under Rule 23" and "the District Court acquiesced in that assumption." *Id.* at 464. At issue was a national class antitrust action in which the plaintiffs and four separate defendants reached settlement after argument, but before the court ruled, on plaintiffs' class action motion. The trial court approved a proposed partial settlement over the strenuous objections of several members of the temporary settlement class. On appeal, the objectors argued that this was contrary to the *Manual.* The Court affirmed. The Court noted that the principal basis for the negative posture of the *Manual* was that at the early stages of a dispute the plaintiffs' counsel is under strong pressure to conform to the defendants' wishes. *Id.* at 465, citing *Ace Heating & Plumbing Co. v. Crane Co.,* 3 Cir. 1971, 453 F.2d 30. The *Manual* is thus concerned with premature, inadequate settlement.

In *Grinnell* the court found that: (1) the litigation had been pending for four years before the settlement; (2) there were not "several different counsel vying for recognition as class representatives"; and (3) the defendants could not play one named representative plaintiff off against another potential representative. *Id.* at 465. Similarly, (1) Spencer's settlement was achieved only after several years of pending litigation; (2) there were not different counsel vying to be class counsel; and (3) Spencer did not play any plaintiffs off against each other. Thus, as in *Grinnell,* "the major concern of the Manual for Complex Litigation's recommendation against conditional approval of a viable class is absent in this case". *Id.* at 465.

The Second Circuit also addressed in *Grinnell* the additional concerns of the *Manual* relative to temporary class members being forced to accept settlement absent an informed choice. The *Grinnell* court found

that the settlement avoided the Manual's concerns since:

"it provided for notice of a hearing and an opportunity to challenge the fairness or any other aspect of the proposed settlement."

*Id.* at 466. In the instant matter the creation of a temporary settlement class was undeniably necessary to carry out the settlement agreed upon by the parties. The temporary settlement class was carefully defined by the trial court, and the terms of settlement were subject to modification after a full hearing. The settlement itself did not provide for the disbursement of funds to named plaintiffs or class members. The trial court suggested that it would hold additional hearings and would carefully supervise the expenditure of funds. Tr. at 135; 164. Significantly, trial counsel could *not* utilize the settlement fund for attorneys' fees. As the court in *Grinnell* described the Manual's recommendations:

It must also be remembered that these recommendations were not meant to be intractable rules. *If they were applied blindly and without an appreciation of their implicit limitations in given circumstances,* they might well jeopardize the right of many plaintiffs to recovery and even invite the likelihood that certain class action suits might never be settled at all.

*Id.* (Emphasis added.)

The objectors attempt to distinguish *Grinnell* on the ground that all four defendants agreed to the settlement; here, the settlement was partial. They also assert that Professor Newberg and the other commentators were concerned only with complete settlement of a class action. They say that "partial settlements will result in little, if any, reduction of a complex class action". We are not impressed with this difference in the cases. The settlement was complete as to the settling defendants and reduced

*Housing Authority v. American Radiator & Standard Sanitary Corp.,* E.D.Pa.1971, 322 F.Supp. 834; *Nurseryman's Exchange, Inc. v. Yoder Bros.,* N.D.Cal.1971, No. C–70–1510; *West Virginia v. Charles Pfizer & Co.,* S.D.N.Y.

1970, 314 F.Supp. 710, *aff'd,* 2 Cir. 1971, 440 F.2d 1079, *cert. den'd,* 1971, 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed.2d 115; *In re Plumbing Fixture Cases,* J.P.M.D.L.1968, 298 F.Supp. 484, 488.

the burden of the settling plaintiffs. For Spencer the settlement was a condition to acceptance of the tender offer made to it. There is nothing in the cases or in the commentaries to suggest that approval of a pre-certification settlement class as a proper legal instrument is based on the settlement being complete as to all the parties.

The non-settling defendants have not lost any of their rights. The judgment of August 25, 1978, declaring the "Temporary Settlement Class" to be the "Permanent Settling Class" and approving the "Covenant Not to Sue and the Settlement Agreement" in terms is applicable only "for the purposes of the settlement of the class action as to defendant Spencer Foods, Inc.".

A number of trial judges, experienced in complex litigation, have found it appropriate to establish a pre-certification settlement class.[6] In the *In Re HomeStake Production Company Securities Litigation*, N.D.Okl.1977, No. 75–C–430, for example, Judge George H. Boldt acknowledged that the Manual "cautions against the certification of a class solely for settlement purposes" but decided that in view of the "extraordinary circumstances . . . where the class issues have been thoroughly briefed and argued and substantial discovery on the underlying facts has been taken such a certification is appropriate". *In the Ampicillin Antitrust Litigation*, D.D.C.1979, 82 F.R.D. 652, Judge Charles R. Richey approved a preliminary settlement class and denied the standing of a non-settling defendant to object to the proceeding. In this case, too, as pointed out, the trial judge, Judge William H. Taylor, had extensive experience in the "retailer" Beef Industry Antitrust Litigation.

■ When a court orders that a notice of a proposed class settlement be sent to members of a temporary settlement class, the order carries the necessary implication that the action complies with Rule 23. Very seldom does the court articulate this determination. It did so, however, in the *Four Seasons Securities Laws Litigation*, W.D.

Okl.1972, 58 F.R.D. 19, 32: "The court found and determined that for the purpose of effectuating the proposed [certification], the prerequisites set out in Rule 23(a) and (b) (3) were met with respect to each of the two classes established by the order." *See also Alaniz v. California Processors, Inc.*, N.D.Cal.1876, 73 F.R.D. 269, 275.

Rule 23 does not deal specifically with a tentative settlement class. "However, a tentative class would appear to be a form of conditional certification, sanctioned by Rule 23(c)(1)". Comment, *Developments—Class Actions*, 89 Harv.L.Rev. 1318, 1357 n.111 (1976). Rule 23(c)(1), in pertinent part, reads: "An order [determining whether a class action is to be so maintained] under this subdivision may be conditional, and may be altered or amended before the decision on the merits". *See, e. g., Esplin v. Hirschi*, 10 Cir. 1968, 402 F.2d 94, 99, *cert.* denied, 1969, 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969); *Dolgow v. Anderson*, E.D.N.Y.1971, 55 F.R.D. 664, 667, *aff'd*, 2 Cir. 1972, 464 F.2d 437.

Professor Newberg also considers tentative temporary settlement classes within the ambit of Rule 23. "On analysis", he perceives "the temporary settlement class as nothing more than a tentative assumption indulged in by the court to facilitate the amicable resolution of the litigation, rather than as some sort of conditional class ruling under Rule 23 criterion". 3 Newberg, Class Actions § 5570c at 476. We agree with his summation:

A blanket rule prohibiting the use of temporary settlement classes may render it virtually impossible for the parties to compromise class issues and reach a proposed class settlement before a class certification. Such a firm restriction does not appear necessary or desirable. The hallmark of Rule 23 is the flexibility it affords to the courts to utilize the class device in a particular case to best serve the ends of justice for the affected parties and to promote judicial efficiencies. A rule prohibiting temporary settlement classes altogether directly eliminates an

**6.** See footnote 5.

important segment of court flexibility in administering and managing a class action to its successful disposition.

.        .        .        .        .

By analogy, for example, Rule 23(c)(1) and (d)(4) authorize a class ruling to be altered or amended by the court at any time before a judgment on the merits. Accordingly, it is altogether proper and consistent for a court to certify a class for settlement purposes, while it might have had more difficulty reaching this determination in a different context. Temporary settlement classes have proved to be quite useful in resolving major class action disputes. While their use may still be controversial, most courts have recognized their utility and have authorized the parties to seek to compromise their differences, including class action issues, through this means.

*Id.* at 479–80.

We hold that in this case a tentative or temporary settlement class was proper.

### III.

### *Definition of the Temporary Settlement Class; Notice*

The May 25, 1978, order and the notice sent to the temporary settlement class defined the class as:

"All persons, except defendants, who are engaged in the business of raising what is commonly known in the cattle business as fat cattle and who have in the period in question sold more than 100 head of fat cattle per annum in any year since January 1, 1968, including all persons who have sold fat cattle to the defendants and their suppliers."

The objectors contend that this definition is ambiguous, particularly because of the term "fat cattle". The non-settling defendants are not affected by this definition, for the class consists only of the plaintiffs settling with Spencer. Spencer, a major purchaser of fat cattle, approved the class. Farr and Farr Farms had the option to opt out of the class.

■ The interests of justice require the protection of absentee members. But the determination of a class and the manner of notice are matters within the trial court's judicial discretion. Our examination of the record leads us to conclude that the trial judge did not abuse his discretion as to either.

■ Fat cattle are standardized cattle which have been placed on a high energy feed for fattening to an optimum weight for sale; the bench mark for fat cattle is U.S.D.A. Choice Grade 3. The term is sufficiently well known and the cattle sufficiently fungible for the Chicago Mercantile Exchange to have a commodities contract for "fat cattle". The trial court had ample evidence that persons receiving notice knew what was meant by the term.

The objectors argue that the notice was ineffective because it did not reach many of the persons who belonged to the "class". The settling parties stipulated that the mailing list to be used for disseminating the notice would be the mailing list of subscribers to the *Beef* Magazine supplemented by a list of persons who sold cattle to Spencer during the period in question. The *Beef* list contained approximately 40,000 names and, when supplemented by the names supplied by Spencer, came to a total of 54,808. There was testimony by the vice-president of the publishing company, that the magazine is distributed primarily to persons who are operators of commercial feedlots and farmer feeders. He added that the magazine is designed to "reach persons who make management decisions in feedlot operations." The advertising director said that *Beef* is designed to reach persons with "control over the feeding systems, the animal health products that are used. . . ."—in other words, the persons in actual physical control of the animals. He also testified that it has coverage of over 90 percent of all fat cattle sold and 90 percent of the persons who raise and feed them.

Rule 23(b)(3) requires that the best notice practicable under the circumstances be provided to those persons "who are identifiable through reasonable effort" F.R.C.P.

23(b)(3); *Nissan Motor Corporation*, 5 Cir. 1977, 552 F.2d 1088, 1097. In the *Eisen* litigation, the Supreme Court found reasonable effort had been made when only 2,500,000 of the potential 6,000,000 class members could be easily identified by name and mailing address. *Eisen v. Carlisle & Jacquelin*, 1974, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732. "Obviously the word 'reasonable' cannot be ignored. In every case, reasonableness is a function of anticipated results, costs and amount involved." *Nissan* at 1099. Although the objectors complain that notice was insufficient, they cannot point to a source for additional names and addressees.

■ The trial court specifically found in its "Order Conditionally Determining a Temporary Settlement Class and Tentatively Approving Proposed Settlement" that class members were sufficiently identified to receive adequate notice by mail, that such notice was the best notice practicable in the circumstances, and that it was in compliance with Rule 23(c)(2) of the Federal Rules of Civil Procedure. The court did not abuse its discretion in approving the manner of notifying the members of the settlement class.

## IV.

### *Conflict of Interest*

A. The objectors contend that the class representatives in *Ludvigson* have an inherent conflict of interest; that they used the threat of class certification to coerce Spencer into settling for a larger amount than they would otherwise be able to obtain. We fail to see how the non-settling defendants can complain about the settling defendant paying too much—or complain that Spencer was coerced; Spencer was anxious to settle. Spencer insisted on approval of the temporary settlement class as a pre-requisite to settling and the settlement itself was consistent with Spencer's demands. Nor can the Farr companies, class members who benefitted from the settlement, complain. Indeed, they have never challenged the merits of the settlement.

The objectors argue that three of the four named plaintiffs in *Ludvigson* have outside entanglements which call into question their ability to represent the class. No objection is made to the fourth representative and, of course, one person may represent a class. None of the three others has any other litigation against Spencer, IBP, or any of the other named defendants. The *MPIA* and the *Ludvigson* class actions complaints filed against the packers are almost identical and ask for the same types of relief. That the representatives have litigation pending against the retailers, does not put them in conflict with other class members. All of the class members have some sort of interest in the litigation against the retailers.

We agree with the trial court that no conflict of interest is produced by the plaintiffs settling with Spencer in all three cases, only one of which is a class action. The trial court has deferred any consideration for the disbursement of funds until the cases against all defendants are terminated. If any conflict should arise, the trial court has authority under Rules 23(c)(4) and 23(d)(2) to create subclasses and to issue protective orders. The settlement funds have been deposited in escrow and are subject to disbursement only upon order of the trial court.

■ We hold that the trial court did not abuse its discretion in determining that there was no conflict of interest as to the class representatives and their counsel.

## V.

### *Fairness of Settlement*

"[I]n determining whether to approve a proposed settlement, the cardinal rule is that the District Court must find that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties." *Cotton v. Hinton*, 5 Cir. 1977, 559 F.2d 1326, 1330. The district court here found that the settlement was "fair, adequate and reasonable, is not collusive, and reflects all the normal perils of litigation as well as the additional uncertainties inherent

in complex class action". In *City of Detroit v. Grinnell*, 2 Cir. 1974, 495 F.2d 448, 455, the Court, which upheld a temporary settlement class, made the statement, and we agree, "so much respect is accorded the opinion of the trial court in these matters that the Court will intervene in a judicially approved settlement of a class action only when objectors to that settlement have made a clear showing that the District Court abused its discretion". *Accord, Young v. Katz*, 5 Cir. 1971, 447 F.2d 431, 433.

■ The instant case had been pending for nearly three years at the time of the settlement hearing. Extensive discovery had been conducted. Moreover, the court took judicial notice of discovery in the companion "retailer" cases in the Beef Industry Antitrust Litigation, which had also been pending for several years. The settling parties had fully advised the court of the reasons for the settlement and the status of the negotiations for settlement.[7] In addition to the usual elements of any compromise there were several significant elements present in this case. (1) Unrebutted testimony convincingly demonstrated the financial necessity of Spencer's settling; and $425,000 was a large sum from a firm in Spencer's financial position. There was a strong likelihood of Spencer's closing its plants in Iowa and Nebraska should it not be able to accept a tender offer conditioned on settling the antitrust action. Closing of the plants would have left no packer of any size left in the area to compete with IBP; a farmer's cooperative competing against IBP would be beneficial to cattlemen in Iowa and Nebraska.[8] (2) Spencer agreed to assist the plaintiffs in discovery and in providing

access to witnesses. (3) No attorneys' fees are to be paid from the settlement fund. No sums are to be withdrawn from the fund without an order of court. The settlement will materially aid the plaintiffs in their litigation against the non-settling defendants. (4) There were virtually no objections from members of the settlement class. There were only three objectors from the class: one did not press his objections at the hearing or appeal; one was counsel for IBP, although a member of the class; one was Farr, speaking for his companies, who did not object to the merits of the settlement or even to the procedure, but seemed to be opposed to the lawsuits generally as harmful to cattlemen and the cattle industry.[9] Only 2.5 percent of the 54,808 who received notice of the proposed settlement opted out. As the trial judge noted in his order, "Opportunity to be heard was afforded to any person who wished to be heard". Indeed, notwithstanding the trial judge's doubt as to the standing of the non-settling defendants, he allowed the general counsel for IBP to testify and counsel for the non-settling defendants to participate in the argument.

We hold that the district court acted well within its discretion in this case in ordering a temporary and permanent settlement class and in approving the settlement agreement between the plaintiffs and Spencer.

The appeal of IBP is dismissed. The judgment of the district court is AFFIRMED.

## 79–1010

This matter resembles No. 78–3345 in that it too involves an attempt by one of

---

7. Copies of the settlement papers were submitted to the trial judge for his review. He expressed several concerns, which resulted in modification of the agreement.

8. In *In re National Student Marketing Litigation*, 68 F.D.R. 151, 156 (D.C.D.C.1974) the district court approved a settlement between the plaintiffs and one of the defendants primarily because the settlement was an "economic necessity, the approval of which will hopefully remove a major roadblock from [the defendant's] attempt at financial recovery."

9. On cross-examination, for example, W. D. Farr testified that he did not agree with the complaint in the packers case because he didn't believe there was any basis for it (Tr. at 31.) In an affidavit filed several months prior to settlement, Farr stated:

"I am opposed to these lawsuits. I believe they are harmful to cattlemen, they fail to deal with the problems of the cattle industry, and that there is no factual basis for the lawsuit." App.—00479.

the relatively small defendants, Flavorland, to settle its liability in all three lawsuits. To the extent the issues are the same as those raised in 78–3345, our holdings in that appeal apply to this appeal.

Unlike the other packer defendants, Flavorland is privately owned. It is about the same size as Spencer.[10] IBP and MBPXL are several times Flavorland's size and have much greater resources. Flavorland has been sharply contracting its business operations and in recent years has closed or sold five of its seven plants. After extensive negotiations between Flavorland and the plaintiffs they reached agreement on a settlement of the three lawsuits. Flavorland would pay the plaintiffs $750,000 in three equal annual payments and would provide the plaintiffs with additional discovery after certification of a permanent settlement class. On December 21, 1978, the district court conditionally approved a temporary settlement class defined as

consisting of all persons who are engaged in the business of raising what is commonly known in the cattle business as fat cattle and who have in the period in question in the complaint sold more than 100 head of fat cattle in any year since January 1, 1968, to any packers in the United States or their suppliers, including without limitation all persons who have sold fat cattle in any quantity during such period to the defendants or their suppliers.

The court directed the mailing of notice to the class, approved the form and method of notice, and scheduled a hearing for February 15, at which the settling parties could make a full record in support of the settlement and the absent members could present any objections they might have. Only after this hearing would the district court approve or disapprove the proposed settlement class and settlement.

The non-settling defendants, IBP and MBPXL appealed, that order. IBP, but not MBPXL, moved in district court to stay the mailing of the notice to the temporary settlement class pending this appeal. The dis-

trict court denied the motion December 29, 1978, in an order finding that "no legal prejudice to [IBP] could occur until after the hearing which is presently set for February 15, 1979", and that "there is doubt as to the standing of [non-settling] defendants to object in this case to settlement by another defendant". By order dated January 12, 1979, this Court ordered that the appeal be expedited, consolidated this appeal with No. 78–3345 and No. 78–3346, and stayed the mailing of the notice to the settlement class. The effect of this stay was, of course, to stay the hearing on the approval or disapproval of the settlement class and the settlement.

The settling parties have not reached first base. They are at the initial stage when the district court has conditionally approved a temporary settlement class subject to disapproval or redefinition at a later hearing. The settlement has not been approved and is subject to disapproval or modification at a later hearing. In contrast, in Spencer there has been a full hearing and the district court has approved a permanent settlement class and the settlement reached by the parties.

■■■■ To be appealable as a "final decision" under 28 U.S.C. § 1291, a district court order must "of its own force terminate the entire litigation". Coopers & Lybrand v. Livesay, 1978, 437 U.S. 463, 467, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351, 357; Cason v. Owen, 5 Cir. 1978, 578 F.2d 572, 573. An order is not appealable under 28 U.S.C. § 1291 unless "it ends the litigation on the merits and comprehends only execution of the court's decree." Dunlop v. Ledet's Foodliner, Inc., 5 Cir. 1975, 509 F.2d 1387, 1389. Moreover, even an order which ends the litigation as to one defendant is not appealable under 28 U.S.C. § 1291 by another defendant as to whom the order does not finally terminate the litigation. Thus, in Goldstein v. Andresen & Co., 5 Cir. 1972, 465 F.2d 972, 973, this Court dismissed for want of a final order an attempted appeal by a non-settling defendant from district

10. See footnote 2.

court approval of a settlement agreement involving another defendant.

IBP asks this Court to apply the "collateral order" doctrine first enunciated in *Cohen v. Beneficial Loan Corp.*, 1949, 337 U.S. 541, 546–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528, 1536–37. That doctrine is inapplicable in this case.

■ As we said in *Western Electric Co. v. Milgo Electronic Corp.*, 5 Cir. 1978, 568 F.2d 1203, 1207: "To preserve even attenuated notions of finality, the collateral order doctrine requires a final disposition of the question by the district court, not a disposition that is 'tentative, informal, or incomplete.' " *Clark v. Lomas & Nettleton Financial Corp.*, 5 Cir. 1978, 581 F.2d 516, involved an attempt to appeal from a district court order tentatively approving the settlement of a shareholders' derivative action and setting a date for a hearing to determine whether the settlement should be given final approval. In dismissing the appeal for want of an appealable order, this Court reasoned: "It is equally clear that the order is not appealable under the collateral order exception of *Cohen v. Beneficial Loan Corp.* . . . Even if we conclude that the order is final and collateral the order before us falls far short of meeting the remaining requirements contemplated by *Cohen*." 581 F.2d at 517 (citations omitted).

In *Coopers & Lybrand v. Livesay*, 1978, 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 the Supreme Court was faced with the question whether an appeal would lie from a district court order *refusing* to certify a lawsuit as a class action under Rule 23. After first ruling that the order could not be appealed as a "final decision" under 28 U.S.C. § 1291, the Supreme Court then held that the order was also not appealable under the collateral order doctrine:

"To come within the 'small class' of decisions excepted from the final judgment rule by *Cohen*, the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment. An order passing on a request for class certification does not fall in that category. First, such an order is subject to revision in the District Court. Second, the class determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.' Finally, an order denying class certification is subject to effective review after final judgment at the behest of the named plaintiff or intervening class members. For these reasons, as the courts of appeals have consistently recognized, the collateral order doctrine is not applicable to the kind of order involved in this case."

437 U.S. at 468–69, 98 S.Ct. at 245. (citations and footnotes omitted).

■ Here, we have an *a fortiori* case for non-appealability in that Judge Taylor's order does not purport finally to determine the class certification question but merely gives conditional approval to the formation of a temporary class with respect to a settlement involving a single settling defendant.

*Weit v. Continental Illinois National Bank Co.*, 7 Cir. 1976, 535 F.2d 1010, involved an attempted appeal by the plaintiffs from a district court order which had largely accepted the defendants' proposals as to the methods of notifying the class. In holding the collateral order doctrine inapplicable and dismissing the appeal, the court said:

The *Cohen* exception, commonly called the collateral order doctrine, does not reach those orders which are merely steps toward final disposition of the merits of the controversy, nor those that do not involve important and unresolved legal questions. . . . The questions decided against the plaintiffs will not conclusively settle any issue other than the propriety of the notice in this particular case under the facts here involved. If review were to be granted on this appeal, we see no reason why almost every order specifying the form and content of notice in a class action would not be appealable.

Such a result would not be compatible with the strong federal policy against most interlocutory appeals, and the sound reasons for the final judgment rule.

535 F.2d at 1014–15 (citations omitted).

We consider it unnecessary to discuss the other issues this appeal raises. The appeals of IBP and MBPXL are DISMISSED.

### 78–3346

■ Four days before the August 11 hearing on the Spencer settlement, IBP moved for leave to amend its answers in the three cases to assert a cross-claim for equitable contribution against Spencer. On September 1, 1978, the trial court denied the motion, holding that in an antitrust action a defendant has no right of contribution against co-defendants.

This Court has recently held that an antitrust defendant has no right of contribution against his co-conspirators. *Abraham Corp. v. Texas Industries, Inc.,* 5 Cir. 1979, 604 F.2d 897. That decision controls this case.

The judgment of the district court is AFFIRMED.

\*   \*   \*   \*   \*   \*

These three matters are remanded to the district court for proceedings consistent with this opinion.

### APPENDIX

Manual for Complex Litigation § 1.46, p. 60.

Several reasons support this conclusion. (1) Rule 23 does not authorize formation of tentative classes for the purpose of settlement. (2) There can be no assurance that the class members will be adequately represented in the settlement negotiations until the findings which are a condition precedent to the formation of a class are made by the court after an opportunity for an evidentiary hearing. Formation of a tentative class for the purpose of settlement with a requirement that the class member accept the settlement or opt out and litigate independently denies to the members of the class the opportunity to show the inadequacy of the representation of the class by the representative party or parties agreeing to the settlement and their counsel. (3) The appropriate membership of the class and the identity of the members cannot be determined in the absence of an opportunity for hearing and judicial findings of fact and conclusions of law. Nor can there be any assurance that the tentative class will be composed of interests which are not conflicting. Absent such findings and conclusions it will be impossible to determine how many members there are in a class, who they are, the aggregate of claims of all members of the class, the amount of the individual claim of each member in relation to the total claims of all members of the class and, therefore, the amount of money which will be payable to each member of the class. This information would seem to be essential to making any rational choice whether to remain in the class and accept the benefits of the settlements or to opt out. (4) In the absence of the development of the information relevant to liability, damages, and the expense of preparation for trial and of trial, there cannot be a fair recognition in settlement negotiations of the potential liability of the party or parties opposing the class and the potential damages that might be recovered for the class. (5) Formation of such a class preempts determination of the question of whether the claim for relief should be litigated for the members of the class or should be the subject of further pretrial preparation with a view toward securing a better settlement or a trial on the merits; and it also preempts the question of what parties and counsel should represent the tentative class since there must be an unofficially negotiated earlier settlement for the purpose of the tentative formation of the class. (6) The formation of a tentative class for the purpose of settlement denies to the class member the choice contemplated by amended Rule 23 to become a member of the proposed class for the purpose of litigation with adequate representation as a member of a litigating class. (7) Formation of such a class denies to a member of the class the right to appear in the action as a party and

to maintain the position of a litigating party. (8) Formation of such a class results in a long delay in preparation of the case for trial of those parties who desire to litigate their claims for relief. (9) In the absence of reasonable discovery conducted on an adversary basis by counsel representing the class, it is impossible to determine whether the proposed settlement has any relation to the economic facts of life relevant to the case.

It has been suggested that the foregoing opposition to the formation of tentative classes for the purposes of settlement constitutes a hostility to settlements which is unknown to the law generally where settlements are favored. But settlement of class actions is a most sensitive area. Simply because the action is a prospective class action "the named plaintiffs have additional leverage when negotiating for settlement of their individual claims." [124] And it would be unfair to permit defendants to settle under threat of a class action which may not really exist.